IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| GEOTAG, INC., <br>     Plaintiff, <br> vs. <br><br> FRONTIER COMMUNICATIONS CORPORATION, LOCAL.COM CORPORATION, WINDSTREAM COMMUNICATIONS, INC., YELLOW BOOK USA, INC., INTELIUS, INC., CENTER'D CORPORATION, IDC NETWORKS, INC., GO2 MEDIA, INC., HELLOMETRO INCORPORATED, MAGICYELLOW, INC., SOLFO, INC., YELP!, INC. and CITYGRID MEDIA, LLC, <br><br>     Defendants. | § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO.: 2:10-cv-00265-TJW <br><br> **ORAL ARGUMENT REQUESTED** |

**DEFENDANT SOLFO, INC.'S REPLY IN SUPPORT OF ITS MOTION TO**
**TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

## I.  INTRODUCTION

Plaintiff Geotag, Inc.'s ("Geotag") response in opposition to Defendant SOLFO, Inc.'s ("SOLFO") motion to transfer this patent case from this District to the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1404(a) (the "Motion"), relies primarily on a three-legged argument:  1) that Geotag allegedly has resided in Plano, Texas since 2007; 2) that the purported "lead" inventor resides in Plano, Texas; and 3) that one of Solfo's website developers resides in Allen, Texas.  All three legs of Geotag's argument fail to withstand scrutiny.

First, Geotag could not possibly have resided in Plano, Texas since 2007, because it did not even exist until July 1, 2010, when it was formed as a subsidiary of, and took ownership of the '474 patent from, Ubixo Limited, an Antiqua company, a mere three weeks before this patent case was filed in this District on July 23, 2010.  Second, the purported "lead" inventor – John Veenstra – did not become an officer of Geotag until December 2010, <u>after</u> this case was filed and <u>after</u> Solfo filed the instant motion.  Third, the alleged Solfo programmer who resides in this District had nothing to do with the design of the Solfo search engine or database and thus has no relevant knowledge relating to the allegedly infringing aspects of Solfo's accused devise.  Consequently, the three legs of Geotag's argument in opposition to this motion are shaky at best and do not support maintaining this case in this District.  In contrast, California – the location of six of the remaining twelve defendants in this case – has a far greater interest in the outcome of this litigation since half of the remaining defendants are located there, it is where the invention at issue was invented and it is where the law firm that prosecuted the '474 patent is located.

## II.  LEGAL ARGUMENT

**A.  The Private Interest Factors Weigh In Favor of Transfer.**

The first private interest factors concerns the relative ease of access to sources of proof.

1

Geotag claims this factor weighs against transfer. In support of its position, Geotag claims that "Geotag and its predecessors, and the '474 patent, have a significant presence and history in EDTex dating back to 2006." Geotag Resp. at 8.

Geotag's representations regarding its origins and presence in this District are highly misleading. The true facts are that the '474 patent was acquired by Geotag's parent, Ubixo Limited ("Ubixo"), an Antiqua company, and that in an attempt to create venue in this District, Ubixo formed Geotag, rented a shared office in Plano, Texas, and transferred the '474 patent to Geotag within a few short days or weeks before filing this action. According to Geotag's recent S-1 Registration Statement ("S-1 Statement") filed on January 4, 2011, with the Securities and Exchange Commission in connection with Geotag's proposed initial public offering, Geotag states that "[o]n July 1, 2010, we were formed as a subsidiary of Ubixo" and that "[o]n July 12, 2010, we were spun off from Ubixo as a stand-alone, independent operating entity." Denton Decl. Exh, B. at p. 1. The S-1 Statement further states that "[i]n connection with the spin-off, Ubixo transferred the GEOTAG business, including the 474 Patent and GEOTAG trademark." Id. at pp. 1-2.

Thus, Geotag did not exist in 2006, and in fact, it was formed only about three weeks before this litigation was commenced on July 23, 2010. Further, Geotag did not acquire the '474 patent in February 2009 as it alleges. As it admits in its S-1 Statement, "[t]he Geotag business, including the 474 Patent and the GEOTAG trademark, was purchased by Ubixo Limited (formerly known as M2 Global Ltd.), an Antigua company, a leading provider of software for electronic payment, in February 2009." Id. It admits that Geotag did not acquire the '474 Patent until later when it was spun off from Ubixo. In fact, when Geotag was originally formed on July 1, 2010, it was named Ubixo, Inc. and was a British Virgin Islands subsidiary of Ubixo Limited. It was then re-incorporated as a Delaware company on July 16, 2010, when it changed its name

to Geotag. Id. It then filed suit in this District. The history of Geotag thus establishes that Ubixo has used Geotag as a proxy in order to create venue in this District, something Ubixo could not have done on its own.

Geotag's S-1 Statement further reveals that the '474 Patent is the "single material asset" of Geotag and that it expects to earn "substantially all" of its revenue from that patent. Id. at 6. Geotag's S-1Statement also indicates that it has only three full-time employees, and that its office in Plano consists of "a dedicated office in addition to shared reception, conference and utility facilities, totaling approximately 2,000 square feet which expires in August 2011." Id. at 36.[1] Although Geotag contends that two out of these three employees resides in Plano, one – John Veenstra did not become employed as Geotag's CEO until December 2010, which was five months after this case was filed and two months after this motion was filed. Id. at 37. The other employee who allegedly resides in Plano is Geotag's Director of Legal Affairs, and Geotag offers no proof of what personal knowledge the legal affairs director might have that would be relevant to this patent infringement case. Its third employee resides in Antiqua which is in the Caribbean where Geotag's parent company, Ubixo, is located.

Geotag's presence in Texas and this District is clearly "recent, ephemeral, and an artifact of litigation." See In re Microsoft Corp., ___ F.3d ___ (Fed. Cir. Jan. 5, 2011); In re Zimmer Holdings, Inc., 609 F.3d 1378, 1381 (Fed. Cir. 2010). In Microsoft, the Federal Circuit reversed an order refusing to transfer that case from this District to the Western District of Washington, and noted that the plaintiff's argument rested on the "fallacious assumption that this court must honor connections to a preferred forum made in anticipation of litigation." In re Microsoft, ___ F.3d at ___. The Federal Circuit held in that case that the plaintiff's step of incorporating under the laws of Texas only sixteen days before filing suit in the Eastern District of Texas "is no more

---

[1] Geotag apparently "shares" this purported office suite with fifty other tenants. Schiell Decl. ¶ 3, Exh. G.

meaningful, and no less in anticipation of litigation, than the others we reject." Id. at __. Similarly, in Zimmer Holdings, the Federal Circuit held that plaintiff's existence in this District should be disregarded in the venue analysis where it transferred its patent prosecution files from Michigan to its Texas offices in anticipation of filing litigation in this District and had no employees in Texas. Id. at 1381. Moreover, in In re Hoffman-La Roche Inc., 587 F.3d 1333, 1336 (Fed. Cir. 2009), the Federal Circuit reached the same conclusion based on evidence that the plaintiff transported copies of its patent prosecution files from California to its litigation counsel in Texas in anticipation of litigation. In both cases, the plaintiff was found to have attempted "to game the system by artificially seeking to establish venue" in the plaintiff's chosen forum.

Here, Geotag and its parent Ubixo are likewise attempting to "game" the system and artificially create venue in this District. Its creation only three weeks before this litigation was filed is no less in anticipation of litigation than that rejected in Zimmer Holdings and in Microsoft. Although Geotag claims the "totality of Geotag's electronic documents that concern the "474 patent or the Geomas ltigation . . . reside in Geotag's office in Plano, Texas," that transfer had to have occurred only a few weeks, if not days, before this litigation was filed because Geotag did not even exist before July 1, 2010. Moreover, the office lease where those documents are allegedly now located is scheduled to expire in August of this year. Geotag's existence in this District thus could not be more recent or ephemeral and clearly is an artifact of litigation.[2]

Geotag also claims that the "vast majority of Solfo's co-defendants are located significantly more convenient to EDTex than CDCal." Geotag Resp. at 9. Geotag does not

---

[2] Even if the location of Geotag's documents were not manufactured for purposes of this litigation, courts have recognized in patent cases that the vast majority of relevant documents come from the accused infringer, not the patentee. In re Genentech Inc., 566 F.3d 1338, 1345 (Fed. Cir. 2009).

explain what it means by "more convenient," but presumably it is relying solely on the geographic distance between those defendants who are located in the Midwest and East – Frontier, Windstream, Yellow Book USA, IDC, Go2Media,[3] and Hellometro – and the Eastern District of Texas. Measuring convenience by geographic distance, however, ignores the convenience of having an international airport only 18½ miles from the courthouse in the case of the Western Division of the Central District of California, as compared to the 169½ miles between Dallas-Fort Worth International Airport and Marshall, Texas. Thus, every defendant who would have to travel to this Court would have to add about three hours of driving time after arriving in Dallas.

Five of the defendants – Solfo, Local.com, Citygrid, DexOne[4] and MagicYellow[5] – are located in Los Angeles County, California. The Central District of California is clearly more convenient for these defendants. Yelp! is located in the Bay Area of Northern California, and Intelius is located in Bellevue, Washington, both of which are clearly more convenient to the Central District of California. Id. at ¶¶ 4, 5. Consequently, seven of the remaining twelve defendants are more conveniently located to the Central District of California.[6]

Geotag also points out that Solfo contracted for a short period of time in 2010 with a programmer – Graham Barr – who resides in Allen, Texas. Geotag, however, does not explain what knowledge this programmer possesses that would be relevant to this patent case. Moreover, it is unlikely that Mr. Barr has any relevant information since he had nothing to do

---

[3] Counsel for Go2Media has recently advised that it has reached a settlement with Geotag and expects to be dismissed from this case shortly. Denton Decl. ¶ 3.

[4] Denton Decl. ¶ 2.

[5] Denton Decl.¶ 7; Tahl Kopel Decl. ¶ 3.

[6] In Genentech, the Federal Circuit rejected reliance on the central proximity of witnesses as a ground for denying transfer, finding it more significant that a significant docant number of witnesses resided within the transferee forum whereas no witness or party was located within the plaintiff's chosen forum. Genentech, 566 F.3d at 1344-45.

with the design or development of the Solfo search engine or database which is the subject matter of the '474 patent. Fanous Decl. ¶ 2. Mr. Barr's wife, Susan Barr, who works in customer service is even less likely to have any relevant information.

Finally, Geotag claims that the three named inventors of the '474 patent reside in Plano, Texas, Chicago, Illinois and Pleasanton, California. Geotag, however, offers no evidence whatsoever in support of its claim that one of the inventors lives in Chicago, Illinois and another lives in Pleasanton, California. Moreover, even if that were true, Pleasanton, California, a Bay Area suburb, is clearly more convenient to Los Angeles. The same is true as to Chicago, once the distance between Marshall and nearest major airport is considered. As to the residence of John Veenstra, the purported "lead" inventor, Geotag offers only the declaration of Elizabeth Morgan who provides no foundation as to her alleged personal knowledge of Mr. Veenstra's residence. The location of the alleged inventors of the '474 patent has therefore not been established.

Geotag's analysis also overlooks the fact that the law firm which prosecuted the '474 patent is located in the Central District of California. Denton Decl. ¶ 9, Exhs. C and D. The lawyers who prosecuted the '474 patent in the patent office are clearly potential witnesses in this case with respect to the prosecution history of the '474 patent, and they are located in Orange County, California, which is in the Central District of California. Id. Because a plurality of the defendants are located in the Central District of California or have offices there, because the law firm that prosecuted the '474 patent is located there, and because Plaintiff's existence in this District is a legal fiction, the first private factor weighs in favor of transfer.

The second private factor – the availability of compulsory process – also weighs in favor of transfer. Geotag identifies only two witnesses who allegedly reside in this District: John Veenstra and Graham Barr. As to the former, Geotag has offered no admissible evidence of Mr. Veenstra's residence. As to the latter, Geotag fails to explain what relevant information Mr. Barr

6

may possess given that he had nothing to do with Solfo's search engine or database design.

In contrast, Solfo has submitted evidence that six defendants – Solfo, Local.com, Citygrid, DexOne, Yelp! and Magic Yellow – and their witnesses and documents are located within California. Compulsory process would be available in the Central District to command the attendance of witnesses residing throughout the state of California. In addition, the law firm that prosecuted the '474 patent is located in California and one of the inventors of the '474 patent is located in California. In contrast, only one possible witness – John Veenstra – is subject to the compulsory process of this Court. This factor therefore weighs in favor of transfer.

The third private factor – the cost of attendance of witnesses – weighs in favor of transfer. Six of the remaining defendants are located in California, making it less costly for them to travel to Los Angeles, California than to Marshall, Texas. Denton Decl. ¶ 7; Exh. A. One defendant is located in Bellevue, Washington and one in Colorado so that these Defendants will also incur less cost to travel to Los Angeles than to Marshall, Texas. Id. That leaves four defendants and the plaintiff who are scattered across the United States. Id. Of these, only Plaintiff Geotag is located within the Eastern District of Texas and would find it more convenient to try the case in Texas. The four Defendants who are scattered across the U.S. will incur significant costs regardless of whether this case is venued in California or Texas. On balance, therefore, the cost of attendance weighs in favor of transfer.

The fourth private factor – other practical problems that make trial easy, expeditious and inexpensive – is at best neutral. Although Geotag claims it would be prejudiced by the delay a transfer would entail and points out that this case was filed over six months ago, it omits the fact that most of the delay in resolving this motion was the result of four motions by Geotag for extensions of time to respond to this motion. It complains that discovery has already commenced in this case, but omits to mention that all of this discovery related to jurisdiction and

venue issues and that no discovery has taken place with respect to the merits of this action. In addition, this Court has only recently set a status conference in this case, but that status conference, set for February 16, 2011, has not been held as of the date of this brief.

Finally, Geotag argues that this Court has already invested significant time familiarizing itself with the '474 patent as a result of the case of <u>Geomas (International) Limited v. Idearc Media Services-West Inc.</u>, 2:10-cv-00475,CE. However, the <u>Geomas</u> case was before a different judge in this Court. Thus, even if this case were to remain in this Court, it would be required to invest the same time and effort familiarizing itself with the '474 patent and the technology at issue as would be the case if it were transferred to a new judge in the Central District of California. Given that any delay caused by transfer is primarily the result of delays caused by Geotag and that neither the transferor judge nor the transferee judge has had any prior experience with the patent or the technology at issue, this factor is neutral.

**B.     The Public Interest Factors Weigh In Favor of Transfer.**

Solfo concedes the first factor – administrative difficulties flowing from court congestion – weighs slightly against transfer given the slightly shorter time to trial in this District.

The second factor – the local interest in having local issues decided at home – however, weighs heavily in favor of transfer. Goetag contends that this district "has a particular interest in deciding this case because Geotag is located in Plano." Geotag, however, fails to disclose that its existence in Plano was recent and was for purpose of establishing venue in this District. As acknowledged in its S-1 Statement Geotag was formed only about three weeks before this litigation was filed and it obtained ownership of the '474 Patent from its Antiqua parent only a few days before filing this lawsuit. Given that Geotag's presence in this District is recent and constitutes a legal fiction, this District has no real interest in this patent or this dispute.

To bolster its claim that this District has a substantial interest in this case, Geotag cites

certain statistics relating to the Yellowbot website at issue which Geotag claims contains 3879 business listing in the Eastern District of Texas, 750 page views or tags, and more than 228 reviews of businesses located in the Eastern District of Texas in the last three years. The interest of the Eastern District of Texas, as measured by the number of businesses in that District on the Yellowbot website and the number of page views and reviews with respect to those businesses, pales in comparison to that of the Central District of California. The corresponding statistics for the Central District of California are 1,078,701 business listings, 9,227,570 page views and 2,044 reviews in the year 2010 alone. Fanous Decl. ¶ 4. Therefore, measured by the number of businesses that would be affected by a ruling in this case, the Central District of California has by far the greater interest at stake.

Moreover, the state of California, and the Central District in particular, has a special interest in the outcome of this case. As already noted, half of the remaining defendants in this case are located in California or have offices in California. The patent was invented in the Central District of California, as evidenced by the location of all three named inventors at the time of the invention at issue. Complt, Exh. A. The law firm that prosecuted the '474 Patent is located in the Central District of California. Complt, Exh. A; Denton Decl. ¶ 9 , Exh. D. California consequently has a huge stake in this litigation.

Because Geotag admits that the other two public factors are neutral, the balance of the public factors weighs in favor of transfer.

## C. **All Remaining Defendants Are Subject to Personal Jurisdiction in the Central District of California.**

Finally, Geotag argues that Solfo has not shown that all defendants would be subject to personal jurisdiction and venue in the Central District of California. This argument is a red herring since Geotag admits in its Complaint that all the defendants maintain and operate a

website similar to the one maintained by Solfo and which Geotag contends in its response to Solfo's companion Motion subjects Solfo to jurisdiction in this Court. Thus, if this Court finds Solfo's website sufficient to subject it to jurisdiction in this Court, it follows that Solfo, and every other defendant who operates a similar website, is subject to general jurisdiction everywhere in the United States, including in the Central District of California.

Moreover, all of the remaining defendants have joined in this motion or have consented to jurisdiction in the Central District of California. Denton Decl. ¶¶ 2-7, Exh. A.

### III.   CONCLUSION

Based on the foregoing, SOLFO requests that this Court transfer this action to the Western Division of the Central District of California in Los Angeles, California.

DATED:  February 17, 2011                                Respectfully submitted,

/s/ Robert W. Denton
Robert W. Denton
Admitted Pro Hac Vice

HUNTON & WILLIAMS LLP
1445 Ross Avenue, Suite 3700
Dallas, Texas  75202-2799
Telephone:  (214)979-3000
Facsimile:  (214) 880-0011
Email: jgerhart@hunton.com

LURIE, ZEPEDA, SCHMALZ & HOGAN
9107 Wilshire Boulevard, Suite 800
Beverly Hills, CA 90210
Telephone: (310) 274-8700
Facsimile (310) 274-2798
Email:  rwdenton@lurie-zepeda.com

ATTORNEYS FOR DEFENDANT
SOLFO, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of February, 2011, a true and exact copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties access this filing through the Court's electronic filing system.

/s/Robert W. Denton
Robert W. Denton