**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| GEOTAG INC.<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>FRONTIER COMMUNICATIONS CORPORATION, LOCAL.COM CORPORATION, DEX ONE CORPORATION, WINDSTREAM COMMUNICATIONS, INC., YELLOW BOOK USA, INC., INTELIUS, INC., CENTER'D CORPORATION, IDC NETWORKS, INC., GO2 MEDIA, INC., HELLOMETRO INCORPORATED, MAGICYELLOW, INC., SOLFO, INC., YELP!, INC. and CITYGRID MEDIA, LLC,<br><br>　　　　　　Defendants. | Civil Action No. 2:10-CV-265-TJW<br><br><br>JURY TRIAL DEMANDED |

## SUGGESTION OF BANKRUPTCY

**PLEASE TAKE NOTICE** that, on November 17, 2010 (the "Petition Date"), Local Insight Media Holdings, Inc. and certain of its subsidiaries (collectively, the "Debtors"),[1] filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the

---

[1]   The Debtors, together with the last four digits of each of the Debtors' federal tax identification number (if applicable), are: Local Insight Media Holdings, Inc. (2696); Local Insight Media Holdings II, Inc. (8133); Local Insight Media Holdings III, Inc. (8134); LIM Finance Holdings, Inc. (8135); LIM Finance, Inc. (8136); LIM Finance II, Inc. (5380); Local Insight Regatta Holdings, Inc. (6735); The Berry Company LLC (7899); Local Insight Listing Management, Inc. (7524); Regatta Investor Holdings, Inc. (8137); Regatta Investor Holdings II, Inc. (8138); Regatta Investor LLC; Regatta Split-off I LLC; Regatta Split-off II LLC; Regatta Split-off III LLC; Regatta Holding I, L.P.; Regatta Holding II, L.P.; and Regatta Holding III, L.P. For the purpose of these chapter 11 cases, the service address for all Debtors is: 188 Inverness Drive West, Suite 800, Englewood, CO 80112.

"Bankruptcy Court"). The Debtors' chapter 11 cases (the "Chapter 11 Cases") are currently pending before the Honorable Kevin Gross, Bankruptcy Judge, and are being jointly administered under the lead case of Local Insight Media Holdings, Inc., Case No. 10-13677 (KG). A copy of the voluntary petition of the lead Debtor Local Insight Media Holdings, Inc. is attached hereto as **Exhibit A**.

For the following reasons, the Debtors, by and through Windstream Communications, Inc. and Frontier Communications Corp, respectfully request that this Court stay the above-captioned proceeding as it applies to Defendants Frontier Communications Corp. and Windstream Communications, Inc.

### The Agreements

On November 30, 2007, Windstream Yellow Pages, Inc., an indirect predecessor to Debtor The Berry Company LLC ("Berry"), entered into that certain Publishing Agreement with Windstream Corporation (the "Windstream Agreement"), an affiliate of Defendant Windstream Communications, Inc. (together with its affiliates, "Windstream").[2] On November 13, 2008, Berry entered into that certain Master Publishing Agreement (the "Frontier Agreement," and, together with the Windstream Agreement, the "Agreements") with Frontier Directory Services

---

[2] Prior to November 30, 2007, Windstream Corporation contributed all the shares of capital stock of Windstream Yellow Pages, Inc. ("Windstream Yellow Pages") -- the Windstream subsidiary responsible for designing, publishing, marketing, distributing and selling advertising in print, Internet and other directories -- to Windstream Regatta Holdings, Inc. ("Windstream Regatta"). As a result of such contribution, Windstream Yellow Pages, which owned the *windstreamyellowpages.com* website, became a wholly-owned subsidiary of Windstream Regatta. On November 30, 2007, pursuant to that certain *Amended and Restated Share Exchange Agreement*, dated as of August 16, 2007, by and among Windstream Corporation, Welsh, Carson, Anderson & Stowe VIII, L.P., Welsh, Carson, Anderson & Stowe IX, L.P., WCAS Capital Partners III, L.P., Regatta Holding I, L.P., Regatta Holding II, L.P. and Regatta Holding III, L.P., certain funds affiliated with Welsh, Carson, Anderson & Stowe acquired 100% equity ownership of Windstream Regatta. Upon consummation of such transaction, Windstream Regatta was renamed Local Insight Regatta Holdings, Inc. ("LIRH"), a Debtor in the Chapter 11 Cases, and Windstream Yellow Pages was renamed Local Insight Yellow Pages, Inc. ("LIYP"). Concurrent with the closing of this transaction, Windstream and LIYP entered into the Windstream Agreement. On June 30, 2009, LIYP merged into Berry, a wholly-owned subsidiary of LIRH. See **Exhibit B**. As a result of such merger, Berry became obligated under the Windstream Agreement.

Company, LLC, Citizens Directory Services Company, LLC, and Frontier Infoservices Inc., which are affiliates of Defendant Frontier Communications Corp. (together with its affiliates, "Frontier," and, together with Windstream, the "Contract Defendants").

> Section 6.4 of the Windstream Agreement provides that Berry will:
>
> indemnify and hold harmless, [Windstream] and [its] respective directors, officers, employees, agents and assigns from and against any and all Losses directly or indirectly based upon, arising from or resulting from . . . any third-party claims that any Primary Directory or Secondary Directory (except any materials or other information provided by [Windstream]) or any grants that [Regatta] makes under this Agreement violate or infringe upon the intellectual property rights of any third party or require the consent of any third party.

Windstream Agreement § 6.4 (emphasis added).  Similarly, section 12.4 of the Frontier Agreement provides that Berry will:

> indemnify and hold harmless [Frontier] and [its] respective directors, officers, employees, agents and assigns from and against any and all Losses directly or indirectly based upon, arising from or resulting from . . . any Claims that any Directory (except any materials or other information provided by Frontier or its Affiliates) violates or infringes upon the intellectual property rights of any third party or requires the consent of any third party. . . .

Frontier Agreement § 12.4 (emphasis added).

## Geotag Litigation

On July 23, 2010, approximately four months before the Petition Date, Geotag Inc. ("Geotag" or the "Plaintiff") commenced the above-captioned action in the United States District Court for the Eastern District of Texas, Marshall Division (the "Geotag Litigation"), alleging, among other things, that the Contract Defendants infringed United States Patent No. 5,930,474, titled "Internet Organizer for Accessing Geographically and Topically Based Information," by offering a "system for providing geographical and topical information to Internet users in a manner disclosed and protected against infringement by one or more claims of the '474 Patent." (Compl. ¶¶ 21-24.)  As a result of the commencement of the Geotag Litigation, and pursuant to

the terms of the Agreements, the Contract Defendants have asserted that Berry is obligated to indemnify them for any and all judgments, costs, fees, and other expenses that arise from the Geotag Litigation. In August 2010, approximately three months prior to the Petition Date, Berry acknowledged its indemnification obligations to the Contract Defendants and agreed to assume their defense in the Geotag Litigation.

## The Automatic Stay

Pursuant to section 362 of the Bankruptcy Code, filing the Debtors' voluntary petitions in the Chapter 11 Cases operated as a stay, applicable to all entities, of, among other things, (a) the commencement or continuation of any and all judicial, administrative, and other actions or proceedings against the Debtors that were or could have been commenced before the commencement of the Chapter 11 Cases or to recover any claims against the Debtors that arose before the commencement of the Chapter 11 Cases, (b) the enforcement of a judgment obtained before the commencement of the Chapter 11 Cases against the Debtors or any property of the Debtors' bankruptcy estates, and (c) any act to obtain possession of property of, or from, the Debtors' bankruptcy estates, or to exercise control over property of the Debtors' bankruptcy estates.

In light of the Contract Defendants' rights under the Agreements to seek indemnification from the Debtors on account of judgments, costs, fees, and other expenses that they may incur during the course of the Geotag Litigation (which rights are acknowledged by the Debtors), the Debtors share an identity of interests with the Contract Defendants. As a result, continuation of the Geotag Litigation against the Contract Defendants would effectively allow the Plaintiff to claim property of the Debtors' bankruptcy estates, which is barred by the automatic stay of section 362 of the Bankruptcy Code. Courts in this circuit and others have held that litigation against entities that have indemnification claims against a chapter 11 debtor implicates the

automatic stay. See, e.g., Reliant Energy Servs., Inc. v. Enron Canada Corp., 349 F.3d 816, 825 (5th Cir. 2003) (recognizing the application of A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994 (4th Cir. 1986) in the Fifth Circuit where there is a "formal tie or contractual indemnification"); Arnold v. Garlock, 278 F.3d 426, 436 (5th Cir. 2001) (rejecting argument that non-bankrupt asbestos co-defendant facing the same allegations as bankrupt co-defendant was entitled to stay where "[t]here is no claim of a formal tie or contractual indemnification to create such an identity of interests"); Beran v. World Telemetry, Inc., 2010 WL 3909683, at *3 (S.D. Tex. Sept. 30, 2010) ("The Fifth Circuit has stated that a section 362 stay should extend to non-bankrupt codefendants only when there is a formal or contractual relationship between the debtor and non-debtors such that a judgment against one would in effect be a judgment against the other"); Am. Honda Fin. Corp. v. Salyer, 2007 WL 1158114 (S.D. Miss. April 18, 2007) ("Fifth Circuit precedent . . . allows a court to extend the automatic stay provision of 11 U.S.C. § 362 by applying the 'identity of interest' exception in cases in which a contractual indemnification agreement exists between a debtor and non-debtor defendant.").[3]

---

[3] See also In re Gucci, 126 F.3d 380, 392 (2d Cir. 1997) ("[A]n action taken against a nondebtor which would inevitably have an adverse impact upon the property of the estate must be barred by the automatic stay provision"); A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994 (4th Cir. 1986), cert. denied, 479 U.S. 876 (1986) (holding that it is appropriate to apply the automatic stay to entities that have indemnification claims against a chapter 11 debtor); In re Philadelphia Newspapers, LLC, 2009 WL 1911785, at *6 (E.D. Pa. July 2, 2009) (finding unusual circumstances for extending section 362(a) "because the Debtors owe potential contractual and common law duties to indemnify the Non-Debtors, [such that] the interests of the Debtors and Non-Debtors in the state action are identical"); In re Stewart, 329 B.R. 910, 915 (Bankr. M.D. Ga. 2005) (observing that unusual circumstances justifying stay of proceedings against non-bankrupt codefendants may exist where third party is entitled to indemnity from debtor for any judgment entered against him); In re Friedman's, Inc., 336 B.R. 896, 897-98 (Bankr. S.D. Ga. 2005) (stay may be extended to non-debtor defendant in unusual circumstances involving considerations such as indemnity provisions between debtor and non-debtor); In re Nat'l Staffing Svcs., LLC, 338 B.R. 35, 37 (Bankr. N.D. Ohio 2005) (identity of interests between debtor and third party may create requisite unusual circumstances to justify staying claims against third party); N.L.R.B. v. McDermott, 300 B.R. 40, 43 n. 7 (D. Colo. 2003) ("The automatic stay may apply to a non-debtor in special circumstances, such as where there is identity of interest between a debtor and a third party so that a judgment against a non-debtor would be binding on a debtor.").

In addition, the Geotag Litigation threatens to distract the Debtors' key personnel from their usual, substantial, and critical duties as debtors in possession in the Chapter 11 Cases. Specifically, certain high-level employees, including members of the Debtors' legal department, would be forced to continue to divert time and attention from the Debtors' restructuring efforts to focus on defending the Geotag Litigation if allowed to proceed against the Contract Defendants. A diversion of such efforts would cause significant harm to befall the Debtors' bankruptcy estates, thereby jeopardizing the Debtors' reorganization efforts.

Accordingly, the Debtors, by and through Windstream Communications, Inc. and Frontier Communications Corp, respectfully request that this Court stay the Geotag Litigation with respect to the Contract Defendants until the conclusion of the Chapter 11 Cases.[4]

---

[4] The Debtors reserve the right to seek an order from the Bankruptcy Court extending the automatic stay, but request a stay from this Court to avoid the need to commence proceedings against Geotag in the Chapter 11 Cases.

Dated:  April 6, 2011                                   Respectfully submitted,


                                                        By: */s/ Nathan C. Dunn*
                                                        Steven S. Boyd
                                                        Texas State Bar No. 24001775
                                                        Nathan C. Dunn
                                                        Texas State Bar No. 24036509
                                                        **LOCKE LORD BISSELL&LIDDELL LLP**
                                                        2800 JP Morgan Chase Tower
                                                        600 Travis Street
                                                        Houston, Texas 77002-3095
                                                        Telephone: 713-226-1200
                                                        Facsimile: 713-223-3717
                                                        sboyd@lockelord.com
                                                        ndunn@lockelord.com
                                                        *Counsel for Frontier Communications*
                                                        *Corporation and Windstream*
                                                        *Communications, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 6, 2011 upon all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ *Nathan C. Dunn*

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel has complied with the meet and confer requirement in Local Rule CV-7(h).  Conferences required by Local Rule 7 were held by telephone on March 29 and 31, 2011 between the below signed and John Edmonds, counsel for Geotag.  This filing is opposed.  Plaintiff indicated that it opposed a stay as requested and discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

/s/ *Nathan C. Dunn*