**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| GEOTAG, INC., | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CASE NO. 2:10-CV-265-JRG |
| | § | |
| FRONTIER COMMUNICATIONS CORP., | § | |
| et al., | § | |
| *Defendants.* | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff GeoTag, Inc.'s Opening Claim Construction Brief (Dkt.

No. 354), Defendants' response (Dkt. No. 361), and Plaintiff's reply (Dkt. No. 365). Also before

the Court are: Defendant Canon U.S.A., Inc.'s ("Canon's") Supplemental Markman Brief (Dkt.

No. 383) and Plaintiff's response (Dkt. No. 399); and a letter brief filed by the "WMA

Defendants,"[1] arguing that certain claims of the patent-in-suit are indefinite (Dkt. No. 401), and

Plaintiff's response (Dkt. No. 404). The Court held a hearing on February 12, 2013.

---

[1] "WMA" refers to Williams, Morgan & Amerson, P.C., which represents many of the moving
Defendants identified by the letter brief. The identified moving Defendants are: BestBuy.com,
LLC; Old Navy, LLC; Target Corp.; Nordstrom, Inc.; Banana Republic, LLC; GAP Inc.; Costco
Wholesale Corp.; Petco Animal Supplies, Inc.; Petco Animal Supplies Stores, Inc.; Zale
Delaware, Inc.; Starbucks Corp.; Darden Corp.; McDonald's Corp.; CVS Pharmacy, Inc.; Rite
Aid Corp.; A&W Restaurants, Inc.; KFC Corp.; Long John Silver's Inc.; Pizza Hut, Inc.; Taco
Bell Corp.; Spatialpoint LLC; Walmart Stores, Inc.; Coldwater Creek, Inc.; Sally Beauty Supply
LLC; L.A. Fitness International LLC; Bally Total Fitness Corp.; Eddie Bauer LLC; Hallmark
Cards Inc.; AMERCO; EMove, Inc.; U-Haul Int'l, Inc.; U-Haul Leasing & Sales Co.; Web Team
Associates, Inc.; Godfather's Pizza, Inc.; Academy Ltd.; Ann Inc.; AT&T Services, Inc.; AT&T
Mobility LLC; Barnes & Noble, Inc.; Brinker International; The Cheesecake Factory; TCF Co.
LLC; Deere & Co.; Fifth Third Bank; Herman Miller, Inc.; Macy's Inc.; Panera LLC; Panera
Bread Co.; Valspar Corp.; VF Corp.; Seven for All Mankind LLC; Nautica Retail USA, Inc.;
The Western Union Co.; Western Union Holdings, Inc.; Clark Equipment Co. d/b/a Bobcat Co.;
Levi Strauss & Co.; The Scotts Co.; Groupe Dynamite, Inc.; and Crocs Inc.

# Table of Contents

I. BACKGROUND ................................................................................................................ 3

II. LEGAL PRINCIPLES ...................................................................................................... 4

III. CONSTRUCTION OF DISPUTED TERMS ................................................................. 8

  A. "database" (Claims 1, 20, 26 & 31) ............................................................................ 8

  B. "entry" (Claims 1, 20 & 31), "entries" (Claims 1, 20 & 31), and "data record" (Claims 18, 24, 25, 36 & 38) ................................................................................................................. 12

  C. "dynamically replicated," "dynamically replicating," "replicated," and "replicating" (Claims 1, 20 & 31) .............................................................................................................................. 20

  D. "hierarchy" (Claims 1, 5 & 20), "hierarchically organized" (Claims 16, 32 & 35), "hierarchy of geographical areas" (Claims 1, 4 & 20), and "wherein said geographical areas are hierarchically organized" (Claim 32) ................................................................................................................ 26

  E. "a database of information organized into a hierarchy of geographical areas" (Claim 1) and "said database of information organized into a predetermine[d] hierarchy of geographical areas" (Claim 20) .............................................................................................................................. 30

  F. ". . . dynamically replicated into at least one narrower geographical area" (Claim 1), ". . . dynamically replicated into at least one of said geographical areas of smaller expanse" (Claim 20), and "dynamically replicating an entry from broader geographical area into said geographical search area" (Claim 31) .................................................................................................................... 32

  G. "geographical search area" (Claims 1, 20 & 31) ...................................................... 41

  H. "organizing a database of on-line information into a plurality of geographical areas" (Claim 31).. 44

  I. "search engine" (Claims 1, 20 & 31) ......................................................................... 46

  J. "said search engine further configured to select one of said hierarchy of geographical areas prior to selection of a topic so as to provide a geographical search area" (Claim 1), "said search engine configured to select at least one geographical area in said hierarchy of geographical areas so as to define a geographical search area" (Claim 20), and "directing a search engine executing in a computer to select one or more of said geographical areas so as to select a geographical search area" (Claim 31) .............................................................................................................................. 47

  K. "on-line information" (Claims 1 & 31) ...................................................................... 49

  L. "organizer" (Claim 1)................................................................................................. 53

  M. "topic" (Claims 1, 18, 20, 24, 31, 34, 36, 37 & 38) .................................................. 57

  N. "entries corresponding to each one of said hierarchy of geographical areas is further organized into topics" (Claim 1), "entries corresponding to each of said hierarchy of geographical area is further organized into topics" (Claim 20), and "organizing said entries corresponding to said plurality of geographical areas into one or more topics" (Claim 31) ...................................... 62

  O. "narrower geographical area" (Claim 1), "geographical area of relatively smaller expanse" (Claim 20), "broader geographical area" (Claims 1 & 31), and "geographical area of relatively larger expanse" (Claim 20)........................................................................................................ 65

IV. CONCLUSION .............................................................................................................. 68

## I. BACKGROUND

Plaintiff asserts United States Patent No. 5,930,474 ("the '474 Patent"), titled "Internet Organizer for Accessing Geographically and Topically Diverse Information." The application that led to the '474 Patent was filed on January 31, 1996, and the '474 Patent issued on July 27, 1999. The Court has designated the above-captioned case as the lead case for numerous consolidated actions. (*See* Dkt. No. 380, 2/5/2013 Order.)

Plaintiff requests that the Court adopt the constructions reached by Judge Charles Everingham IV of this Court in *Geomas (Int'l) Ltd., et al. v. Idearc Media Services-West, Inc.*, No. 2:06-cv-475, Dkt. No. 110 (E.D. Tex. Nov. 20, 2008) ("*Geomas*").

On November 20, 2012, the District of Delaware held a claim construction hearing in a parallel[2] declaratory judgment action filed against GeoTag by Microsoft Corp. and Google Inc., *Microsoft Corp., et al. v. GeoTag Inc.*, No. 1:11-CV-175 (D. Del.). That case has sometimes

---

[2] Judge David Folsom of this Court denied a motion to stay that was filed by some of the Defendants in the Eastern District of Texas. *See GeoTag Inc. v. Georgio Armani S.P.A., et al.*, No. 2:10-CV-569, Dkt. No. 78 (E.D. Tex. Nov. 14, 2011). Those Defendants argued that the "customer suit exception" to the first-filed rule should be applied and that the Delaware case should be allowed to proceed first. Judge Folsom found that the motion was premature because the parties disputed what GeoTag was accusing. *Id.* at 5-6. GeoTag had not yet served infringement contentions, so the parties and the Court could not properly compare the Texas cases with the Delaware case. *See id.* The District of Delaware then denied GeoTag's motion to transfer the Delaware case to the Eastern District of Texas, applying the "customer suit" exception to the first-filed-case rule and affording significant weight to the plaintiffs' choice of forum, as required by the law of the Court of Appeals for the Third Circuit. *Microsoft Corp., et al. v. GeoTag Inc.*, No. 1:11-CV-175, Dkt. No. 32 at 10-13 (D. Del. Jan. 13, 2012). This Court then denied a renewed motion to stay the Texas cases, finding that Defendants had failed to meet their burden to establish that the "customer suit exception" applied. *See GeoTag Inc. v. Georgio Armani S.P.A., et al.*, No. 2:10-CV-569, Dkt. No. 149 (E.D. Tex. Aug. 27, 2012) ("Neither Microsoft, Google, nor the customer defendants produce any concrete technical evidence to support their contention that Microsoft and Google supply the entire accused system."). As a result, the Texas cases and the Delaware case are proceeding in parallel.

been referred to as the "Delaware case" or the "Microsoft case" during this litigation.[3] Microsoft and Google are not parties to any of the cases in the Eastern District of Texas. The District of Delaware has not yet entered a claim construction order in the Microsoft case.

## II. LEGAL PRINCIPLES

It is understood that "[a] claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999). Claim construction is clearly an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

To ascertain the meaning of claims, courts look to three primary sources: the claims, the specification, and the prosecution history. *Markman*, 52 F.3d at 979. The specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. *Id.* A patent's claims must be read in view of the specification, of which they are a part. *Id.* For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims. *Id.* "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of the patentee's invention. Otherwise, there would be no need for claims. *SRI Int'l v. Matsushita*

---

[3] Also pending in the District of Delaware is another declaratory judgment action, *Oracle America, Inc. v. GeoTag, Inc.*, Case No. 1:12-CV-621, which is at a relatively early stage, having been filed on May 18, 2012.

*Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc).  The patentee is free to be his own

lexicographer, but any special definition given to a word must be clearly set forth in the

specification.  *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992).

Although the specification may indicate that certain embodiments are preferred, particular

embodiments appearing in the specification will not be read into the claims when the claim

language is broader than the embodiments.  *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*,

34 F.3d 1048, 1054 (Fed. Cir. 1994).

     This Court's claim construction analysis is substantially guided by the Federal Circuit's

decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc).  In *Phillips*,

the court set forth several guideposts that courts should follow when construing claims.  In

particular, the court reiterated that "the claims of a patent define the invention to which the

patentee is entitled the right to exclude."  415 F.3d at 1312 (quoting *Innova/Pure Water, Inc. v.

Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  To that end, the words

used in a claim are generally given their ordinary and customary meaning.  *Id.*  The ordinary and

customary meaning of a claim term "is the meaning that the term would have to a person of

ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date

of the patent application."  *Id.* at 1313.  This principle of patent law flows naturally from the

recognition that inventors are usually persons who are skilled in the field of the invention and

that patents are addressed to, and intended to be read by, others skilled in the particular art.  *Id.*

     Despite the importance of claim terms, *Phillips* made clear that "the person of ordinary

skill in the art is deemed to read the claim term not only in the context of the particular claim in

which the disputed term appears, but in the context of the entire patent, including the

specification."  *Id.*  Although the claims themselves may provide guidance as to the meaning of

particular terms, those terms are part of "a fully integrated written instrument." *Id.* at 1315

(quoting *Markman*, 52 F.3d at 978). Thus, the *Phillips* court emphasized the specification as

being the primary basis for construing the claims. *Id.* at 1314-17. As the Supreme Court stated

long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive

portions of the specification to aid in solving the doubt or in ascertaining the true intent and

meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878). In

addressing the role of the specification, the *Phillips* court quoted with approval its earlier

observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir.

1998):

> Ultimately, the interpretation to be given a term can only be determined and
> confirmed with a full understanding of what the inventors actually invented and
> intended to envelop with the claim. The construction that stays true to the claim
> language and most naturally aligns with the patent's description of the invention
> will be, in the end, the correct construction.

*Phillips*, 415 F.3d at 1316. Consequently, *Phillips* emphasized the important role the

specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation.

Like the specification, the prosecution history helps to demonstrate how the inventor and the

Patent and Trademark Office ("PTO") understood the patent. *Id.* at 1317. Because the file

history, however, "represents an ongoing negotiation between the PTO and the applicant," it may

lack the clarity of the specification and thus be less useful in claim construction proceedings. *Id.*

Nevertheless, the prosecution history is intrinsic evidence that is relevant to the determination of

how the inventor understood the invention and whether the inventor limited the invention during

prosecution by narrowing the scope of the claims. *Id.*; *see Microsoft Corp. v. Multi-Tech Sys.,*

*Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) (noting that "a patentee's statements during prosecution, whether relied on by the examiner or not, are relevant to claim interpretation").

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony. The *en banc* court condemned the suggestion made by *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes. *Phillips*, 415 F.3d at 1319-24. According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." *Id.* at 1321. *Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter. *Id.*

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. Instead, the court assigned dictionaries a role subordinate to the intrinsic record. In doing so, the court emphasized that claim construction issues are not resolved by any magic formula. The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language. *Id.* at 1323-25. Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant.

In general, prior claim construction proceedings involving the same patents-in-suit are "entitled to reasoned deference under the broad principals of *stare decisis* and the goals articulated by the Supreme Court in *Markman*, even though *stare decisis* may not be applicable

7

*per se*." *Maurice Mitchell Innovations, LP v. Intel Corp.*, No. 2:04-CV-450, 2006 WL 1751779, at *4 (E.D. Tex. June 21, 2006).

## III. CONSTRUCTION OF DISPUTED TERMS

The parties have not submitted any agreed claim constructions.  As to the disputed terms, each side has grouped the terms differently.  The Court has arranged the terms into 15 groups for purposes of this Memorandum Opinion and Order, as set forth herein.

### A.  "database" (Claims 1, 20, 26 & 31)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "a collection of information or data organized such that a computer program can quickly retrieve selected information or data" | "a data structure of ordered entries separate from the user's browser that is accessed by the search engine to search geographically and topically" |

(Dkt. No. 354, at 9; Dkt. No. 361, at 39.)

(1)  The Parties' Positions

Plaintiff cites *Geomas* and extrinsic technical dictionary definitions, as well as the plain language of the claims.  (Dkt. No. 354, at 9.)

Defendants submit that "[t]he primary disputes between the Parties' proposed constructions are as follows: (i) whether 'database' can be construed to include data resident in the user's Internet browser; and (ii) whether the database must comprise a 'data structure of ordered entries' rather than, as alleged by GeoTag, a simple 'collection of information or data.'" (Dkt. No. 361, at 39.)  As to the first issue, Defendants argue that the specification consistently discloses and illustrates that the database is remote from the user's browser.  (*Id.*, at 40.)  As to the second issue, Defendants argue that "the database of the '474 Patent—indeed any database— must include some type of 'data structure' rather than an unstructured set of data."  (*Id.*, at 40.)

As to *Geomas*, Defendants respond that "the disputed issues that the Parties present here were not presented in the prior litigation." (*Id.*, at 41.)

Plaintiff replies that "[a]ll of Defendants' arguments are directed toward improperly importing limitations from preferred embodiments into the claims and redefining the term." (Dkt. No. 365, at 4.)

At the February 12, 2013 hearing, Plaintiff explained that the significance of "quickly retrieve" in its proposal is that a search need not "slog through" all of the data in the database to obtain search results.

(2)  Analysis

Claim 1 is representative and recites:

> 1.  A system which associates on-line information with geographic areas, said system comprising:
> a computer network wherein a plurality of computers have access to said computer network; and
> an organizer executing in said computer network, wherein said organizer is configured to receive search requests from any one of said plurality of computers, said organizer comprising:
> a *database* of information organized into a hierarchy of geographical areas wherein entries corresponding to each one of said hierarchy of geographical areas is further organized into topics; and
> a search engine in communication with said *database*, said search engine configured to search geographically and topically, said search engine further configured to [s]elect one of said hierarchy of geographical areas prior to selection of a topic so as to provide a geographical search area wherein within said hierarchy of geographical areas at least one of said entries associated with a b[roa]der geographical area is dynamically replicated into at least o[n]e narrower geographical area, said search engine further configure[d] to search said topics within said selected geographical search area.

The Summary of the Invention discloses:

> Under another aspect, the invention comprises a system for composing the display format of remotely accessible information in an on-line network. The system comprises at least one user computer. The user computer is configured to display

remotely accessible information. The system further comprises a *database* which stores remotely accessible information and a plurality of display formats.

('474 Patent at 3:31-36 (emphasis added).) The specification further discloses the use of a search engine to search a database:

FIG. 3 is a system flow diagram that illustrates the method used in accordance with the preferred embodiment to service a geography query by the user. That is, when the user selects a geographic area (from the decision block 205 of FIG. 2), the system of the preferred embodiment processes this request and provides the request to a search engine, which searches the geography database 210 and cooperates with the search engine in order to generate the appropriate HyperText Mark-up Language (HTML) page for display to the user. For example, such a page is depicted in FIG. 12. In one advantageous embodiment of the invention, the geography database 210 includes the information to be displayed, while another database called the yellow page list description (YPLD) configuration database includes the display format information. The search engine combines the information from the geography database 210 and the YPLD configuration database to generate the HTML document.

(*Id.* at 10:42-58.) The specification also discloses that databases can be accessed "via the Internet":

FIG. 8 is an overall system data structure diagram that illustrates the relationships between the multiple databases and executable files used as search engines to access the databases. As shown in FIG. 8, the user interfaces with the Internet via the Internet link 305 and an HTTP browser 830 (e.g., the Netscape browser). An HTTP server 820 represents the local Internet server to which the user connects when communication is established on the Internet. This HTTP server 820 runs a plurality of executable program[s] (or cgi-programs) which act as search engines for accessing information on the several databases within the system of the preferred embodiment.

(*Id.* at 18:10-22.)

Plaintiff's proposal is the construction that the Court reached in *Geomas*. *Geomas* at 11. The *Geomas* decision explained: "The primary issue regarding this term is whether the term should be limited to 'interrelated data records,' as Idearc proposes. Although the patent suggests that there is a relationship between the organized data or information, *see* [discussion of

10

"hierarchy" terms], there is no need to limit the term 'database' as suggested by the Defendant."
*Id.*

The specification, as quoted above, together with Figures 3 and 8, discloses that in preferred embodiments the database is separate from the user's browser. Nonetheless, no such limitation is evident in the claims. Also, although the specification and the claims explain that the database is accessed by a search engine, that limitation is addressed by other language in the claims and need not be imported into the generic term "database." Finally, the use of the word "quickly" in *Geomas* and in Plaintiff's proposal here is potentially confusing, so the Court instead clarifies that the database is organized so as to facilitate retrieval of information.

The Court therefore hereby construes **"database"** to mean **"a collection of information, or of data, that is organized to facilitate retrieval of selected information or data."**

**B.  "entry" (Claims 1, 20 & 31), "entries" (Claims 1, 20 & 31), and "data record" (Claims 18, 24, 25, 36 & 38)**

| "entry" and "entries" (Claims 1, 20 & 31) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| "data contained in a database"<br><br>(Dkt. No. 354, at 10.) | "a listing contained in the database that includes multiple data records"<br><br>(Dkt. No. 361, at 15.) |
| "data record" (Claims 18, 24, 25, 36 & 38) | |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| "No need to construe.  Plain and ordinary meaning."<br><br>(Dkt. No. 354, at 23.) | "one or more fields within an entry (e.g., phone number, address)"<br><br>(Dkt. No. 361, at 15.) |

(1)  The Parties' Positions

As to the terms "entry" and "entries," Plaintiff argues claim differentiation as to dependent Claims 18, 24, 27, and 36, which recite that "entries" comprise "data records."  (Dkt. No. 354, at 10.)  Plaintiff concludes that "an 'entry' may include a data record; but it is not limited to data records."  (*Id.*)  Plaintiff also submits that the terms "entry" and "entries" in the specification "are used broadly to include both an individual item or piece of data (e.g., a city name), as well as to refer to compilations of data (e.g., a yellow page listing, final destination, or data records)."  (*Id.*)

Defendants respond that Plaintiff's proposed constructions for "entry," "entries," and "data record" "(1) completely ignore the specific, structured format of the information in the database defined by the '474 Patent, (2) wholly fail to distinguish an entry from a data record, and (3) impermissibly seek to recapture disclaimed scope."  (Dkt. No. 361, at 15.)  Defendants

argue that an entry must contain multiple fields.  (*Id.*, at 16.)  Defendants submit that Plaintiff's proposal for "entry" is "so overly broad and vague that it could be anything from a single character to the entire database."  (*Id.*, at 18.)  "Without the combination of topical information and associated geographical information, as provided by each entry, the invention does not function."  (*Id.*)  Defendants also argue that the use of "entries" and "data records" in close proximity to one another in the same claims demonstrates that those terms must have different meanings.  (*Id.*)  Finally, Defendants highlight that during prosecution, the patentee narrowed the claims by replacing "information" with "entries," but "[Plaintiff's] current 'data in the database' construction is every bit as broad and general as the disclaimed information."  (*Id.*, at 19.)

In reply, Plaintiff emphasizes that *Geomas* agreed that "entry" is used broadly and found that there was no prosecution disclaimer.  (Dkt. No. 365, at 5.)  Plaintiff also submits that "Defendants' argument that an 'entry' 'includes multiple data records' is inconsistent with the claims and was explicitly rejected in *Geomas*."  (*Id.*, at 6.)

At the February 12, 2013 hearing, Plaintiff argued that the term "entry" is not limited to being a "listing" because the specification discloses a "nonlist entry": "A description field 1325 contains HTML text which is displayed for a nonlist entry.  This text may, for example, include information about the current entry, or may provide the user with a greeting, etc."  ('474 Patent at 20:7-10.)

As to the term "data record," Plaintiff submits that the term "has a well-understood plain and ordinary meaning and does not have any special meaning in the art or as disclosed in the '474 patent."  (Dkt. No. 354, at 23.)  Plaintiff also notes that no party in the *Geomas* case or the Delaware case requested construction of this term.  (*Id.*)  As to Defendants' proposed construction, Plaintiff argues:

The claims state that the entries may "comprise a plurality of data records" or "comprise data records," not fields. (Claims 18, 24). "Data records" initially have no limitation on the information they contain (e.g., claims 18, 24), and only dependent claims further limit the data records to containing information about institutions or enterprises. (Claims 25, 36). Therefore, the claims do not support construing "data records" to be limited to fields, or limiting the data records to containing information about institutions, such as phone number and address.

(*Id.*, at 24.)

Defendants respond that the ordinary meaning of "data record" is "record," which Defendants argue is inconsistent with how "data record" is used in the claims and the specification. (Dkt. No. 361, at 20.) In other words, Defendants argue that the patentee gave "data record" a special meaning that is different from the ordinary meaning of "data record." Defendants submit that whereas the specification discloses that records include one or more fields, the claims use the term "data record" to refer to the concept of a field. (*Id.*, at 21.) Defendants conclude that although the specification uses "records" and "entries" synonymously, the term "data records" is *not* used synonymously with either "records" or "entries." (*Id.*)

Plaintiff replies that Defendants' proposal to depart from the ordinary meaning of "data records" is unwarranted and would lead to circular constructions. (Dkt. No. 365, at 11.)

(2) Analysis

As to the prosecution history:

The purpose of consulting the prosecution history in construing a claim is to exclude any interpretation that was disclaimed during prosecution. Accordingly, where the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender. Such a use of the prosecution history ensures that claims are not construed one way in order to obtain their allowance and in a different way against accused infringers.

*Chimie v. PPG Indus. Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) (citations and internal quotation marks omitted).

Here, the patentee amended the independent claims at issue so as to replace "information" with "entries." (*See, e.g.,* Dkt. No. 361, Ex. H, 8/7/1998 Response, at 2.) As found by *Geomas*, however, Defendants' disclaimer argument assumes that a disclaimer of "information" is tantamount to a disclaimer of "data." *Geomas* at 16. Here as in *Geomas*, Defendants have failed to establish that "information" and "data" are synonymous, so the Court finds no disclaimer of "data." *Id.*; *see Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1289 (Fed. Cir. 2009) ("[O]wing in part to the inherent ambiguities of prosecution history, the doctrine of prosecution disclaimer only applies to unambiguous disavowals.").

As to the claims discussed by the parties, independent Claim 20 and dependent Claim 24, for example, recite (emphasis added):

> 20.  A machine for locating information organized into geographically-based areas, said machine comprising:
>     a database of information accessible b[y] a computer, said database of information organized into a predetermine[d] hierarchy of geographical areas comprising at least a geographical area of relatively smaller expanse and a geographical area of relatively larger expanse, said area of larger expanse including a plurality of areas of smaller expanse and wherein *entries* corresponding to each of said hierarchy of geographical area is further organized into topics; and
>     a search engine executing in a computer and in communication with said database, said search engine configured to select at least one geographical area in said hierarchy of geographical areas so as to define a geographical search area wherein at least one of said *entries* in said geographical area of relatively larger expanse is dynamically replicated into at least one of said geographical areas of smaller expanse, said search engine further configured to search said topics within said geographical search area.
>
> * * *
>
> 24.  The machine of claim 20, *wherein said entries comprise data records* wherein each of said data records is associated with at least one of said topics.

Claim 24 thus recites that "entries comprise data records," which suggests that "entries" and "data records" are distinct terms because:

the use of both terms in close proximity in the same claim gives rise to an inference that a different meaning should be assigned to each. *See Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1579 (Fed. Cir. 1996) (stating that if two terms described a single element, "one would expect the claim to consistently refer to this element [with one or the other of the two terms], but not both, especially within the same clause"). That inference, however, is not conclusive; it is not unknown for different words to be used to express similar concepts, even though it may be poor drafting practice.

*Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1373 (Fed. Cir. 2004) (square brackets in original).

Despite the inference of different meaning that arises from the use of "entries" and "data records" in close proximity in the same claim, the dependent claims at issue contain additional limitations. In other words, those dependent claims can be read to describe particular requirements for the "entries," not that the term "data records" must mean something different than the term "entries." *Cf. Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001) ("Claim differentiation, while often argued to be controlling when it does not apply, is clearly applicable when there is a dispute over whether a limitation found in a dependent claim should be read into an independent claim, *and that limitation is the only meaningful difference between the two claims*.") (emphasis added); *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1359 (Fed. Cir. 2012) ("[C]laim differentiation is not a hard and fast rule and will be overcome by a contrary construction dictated by the written description or prosecution history") (internal quotation marks omitted); *Rembrandt Techs., LP v. Cablevision Sys. Corp.*, No. 2012-1022, 2012 WL 4017470, at *9 (Fed. Cir. Sept. 13, 2012) ("There is no reason to apply the doctrine of claim differentiation, however, where, as here, the district court's construction does not render any claim redundant or superfluous.").

Further, because the term "data records" does not appear in the specification, the specification contains little basis, if any, upon which to distinguish "entries" from "data records." Instead, the specification uses the term "record," and a "record" is disclosed as containing "fields":

> As is well known in the art, records stored within a database format typically include one or more fields, wherein each field is given a name so that the field is independently accessible.

('474 Patent at 27:3-6.) The extrinsic technical dictionary submitted by Defendants provides additional support by equating "data record" with "record" and by defining "record" to mean "[a] data structure that is a collection of fields (elements), each with its own name and type." (Dkt. No. 361, Ex. O, *Microsoft Press Computer Dictionary* 132, 399 (1997) (definition of "data record": "*See* record").)

In sum, the absence of any basis in the specification for distinguishing "entries" from "data records" leads the Court to conclude that the use of both "entries" and "data records" in various dependent claims was simply "poor drafting practice" that occurred when the patentee amended the claims to replace "information" with "entries." *Bancorp Servs.*, 359 F.3d at 1373. That this was simply "poor drafting practice" is reinforced by other inconsistencies in the claims that resulted from the amendment, in particular the apparent subject-verb disagreement between "entries" and "is" in Claims 1 and 20, which recite (emphasis added): "wherein *entries* corresponding to each [one] of said hierarchy of geographical areas *is* [*sic*, are] further organized into topics." The dependent claims identified by the parties therefore do no warrant construing "entry" and "data record" to have different meanings.

As to the proper construction for "entry" and "data record," the specification uses "data," "entry," and "entries" repeatedly. (*See, e.g.,* '474 Patent at 12:4-5 ("the displayed entry will

17

simply be the city name designated as the NameKey parameter"), 15:23-25 ("Any entry whose parent folder name matches the name specified will be returned by the search."), 18:62-63 ("Sample entries for the geography database 210 are included in Table 7.") & 22:41 ("…the entry 'Points of Interest for Los Angeles' . . . .").)  As Plaintiff submits, "varied use of a disputed term in the written description attests to the breadth of a term rather than providing a limiting definition."  *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1308 (Fed. Cir. 2003).

Nonetheless, Plaintiff's proposal of "data contained in a database" is overbroad because, as Defendants have noted, such a construction could encompass "anything from a single character to the entire database."  (Dkt. No. 361, at 18.)

As to Defendants' proposal, if "data records" were fields, as Defendants propose, then Claim 18, for example, would recite that each of the fields "is associated with at least one of said topics and at least one of said geographical areas."  Such an interpretation would be inconsistent with the specification, which discloses that entries, not fields, are associated with topics and geographical areas.  (*See* '474 Patent at 12:28-32 ("As used herein, a 'parent' entry is an *entry (e.g., geographic or topical)* which encompasses one or more children entries within the geographic or topical hierarchy, and a 'child' entry is an entry which is encompassed by a parent entry within the geographical or topical hierarchy.") (emphasis added); *see also id.* at Table 7 (showing examples of "records" associated with geographical areas, for example, "Continent Record," "Country Record," and "City Record").)

Alternatively, to whatever extent Defendants propose that a data record must contain multiple fields, such a proposal should be rejected as an attempt to limit the claims to a preferred embodiment.  *Phillips*, 415 F.3d at 1323 ("To avoid importing limitations from the specification

18

into the claims, it is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so.").

In the end, the claims and the specification must be read as a whole. *Phillips*, 415 F.3d at 1313 ("[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."). The absence of the term "data records" in the specification, together with the disclosure of database "records" as containing "fields" ('474 Patent at 27:3-6), warrants construing "entry" to have the same meaning as "data record." Moreover, to whatever extent the constructions proposed in another case may be probative, the constructions that were proposed by the defendant in *Geomas* are consistent with reading "data record" to mean "entry." *See Geomas* at 8, 11, 12, 14, 15, 18, 19, 20, 24, 29, *esp.* at 15 (proposing that "entries" be construed as "data records in the database . . .").

Finally, although Plaintiff cites the disclosure of "nonlist entries" as evidence that an entry is not a "listing," the meaning of "nonlist entries" is not sufficiently clear to warrant expanding the scope of the term "entries" so as to encompass any grouping of data in the database. Instead, the specification refers to information "listings" in a context that corresponds to "data records" as used in the claims. (*See, e.g.,* '474 Patent at 5:60-65, 10:1-6 ("If the user desires to access further information about one of the particular entities listed (for example, if the user desires to contact a particular high school), then the address, phone number, etc., of that entity (e.g., high school) would be presented to the user when the user points to the desired *listing* and clicks the mouse button.") (emphasis added), 16:38-42 & 18:1-4.)

The Court accordingly hereby construes the disputed terms as set forth in the following chart:

| Term | Construction |
|---|---|
| **"entry"** | **"a listing that is contained in the database and that includes one or more fields"** |
| **"entries"** | **"listings that are contained in the database and that each include one or more fields"** |
| **"data record"** | **"a listing that is contained in the database and that includes one or more fields"** |

**C. "dynamically replicated," "dynamically replicating," "replicated," and "replicating" (Claims 1, 20 & 31)**

| **"dynamically replicating" and "dynamically replicated" (Claims 1, 20 & 31)** | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| "automatically copying or inheriting, at the time needed rather than at a time decided or established in advance"<br><br>(Dkt. No. 354, at 11.) | "automatically copying within the database at the time of a search rather than at a time established in advance"<br><br>(Dkt. No. 361, at 22.) |
| **"replicated" and "replicating" (Claims 1, 20 & 31)** | |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| "copied or inherited" and "copying or inheriting"<br><br>(Dkt. No. 354, at 11.) | No separate proposal by Defendants as to these terms. |

<u>(1) The Parties' Positions</u>

Plaintiff proposes the constructions reached in *Geomas* and submits that "dynamically replicating" and "dynamically replicated" were clarified by the patentee and the PTO during

prosecution. (Dkt. No. 354, at 12.) Plaintiff notes that in the Notice of Allowability, the Examiner used the phrase "automatically inheriting" in place of the term "dynamically replicating." (*Id.* (citing Ex. G, 12/21/1998 Notice of Allowability, at 2).)

Defendants respond that their proposed constructions clarify the *Geomas* constructions to reflect that "dynamic replication occurs into a geographical area in the database." (Dkt. No. 361, at 23.) Defendants argue that *Geomas* rejected Plaintiff's argument that dynamic replication could occur in search results rather than within the database. (*Id.*) Defendants also argue:

> GeoTag's proposed construction requiring that dynamic replication occur "at the time needed rather than at a time decided or established in advance" injects further ambiguity and indefiniteness into the claims because there is no guidance as to what the "time needed" actually is or how it would be determined. As is clear from the claim language and as recognized by Magistrate Judge Everingham and Geomas, dynamic replication must occur "at the time of a search."

(Dkt. No. 361, at 25.) Finally, Defendants argue that although "the words 'automatically inherited' are used in the specification, this language actually describes the way that data is stored in the geography database and is unrelated to dynamic replication." (*Id.*, at 26 (footnotes omitted)).

Plaintiff replies that the patent and the prosecution history use "inheriting" to explain "dynamic replication," that the claims refer to dynamic replication in the context of a search engine rather than a database, and that *Geomas* "did *not* reject (or even address) the argument of dynamic replication occurring in the displaying of search results." (Dkt. No. 365, at 7.)

At the February 12, 2013 hearing, Defendants highlighted the prosecution history, including the July 28, 1998 examiner interview, as to which the Interview Summary signed by the Examiner states that "[t]he dynamic replication of an entry in narrow geographical area would overcome the prior art of record." (Dkt. No. 361, at Ex. F.) Defendants also emphasized

that the claim language itself requires that dynamic replication occur within the database because the "geographical areas" are recited as being within the database. As to dynamic replication occurring "at the time of a search," Defendants noted that the parties in *Geomas* "agree[d] that 'dynamic' means 'at the time needed rather than decided or established in advance.'" *Geomas* at 22. Defendants also noted, however, the *Geomas* plaintiff's statement in its briefing that dynamic replication occurs "at the time of a search." (Dkt. No. 361, Ex. S at 25.) Finally, Defendants urged that because "copying" and "inheriting" are synonymous in the context of the claims, "inheriting" should be omitted from the Court's construction because "inheriting" would tend to confuse rather than clarify.

(2) Analysis

The terms "dynamically replicating" and "dynamically replicated" were added to the claims during prosecution, and the *Geomas* decision noted the Examiner's interpretation that "dynamic replication" means "automatically inheriting." (*Geomas* at 22; Dkt. No. 354, Ex. G, 12/21/1998 Notice of Allowability, at 3.) Statements by a patent examiner can be considered during claim construction:

> Although unilateral statements by an examiner do not give rise to a clear disavowal of claim scope by an applicant, it does not necessarily follow that such statements are not pertinent to construing claim terms. Statements about a claim term made by an examiner during prosecution of an application may be evidence of how one of skill in the art understood the term at the time the application was filed.

*Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005).

The specification does not use the terms "dynamically replicating," "dynamically replicated," "replicating," or "replicated." The term "dynamically" appears in four instances (emphasis added):

22

Furthermore, the inventors have recognized the need for a system which *dynamically* generates display documents in order to accommodate the various kinds of information and information formats which may be found on the Internet.

* * *

[I]f the information contained within the notes document includes a fax number, an E-mail address and an advertisement graphical image, the notes document will include a header field which designates which template parameters should be used to *dynamically* construct an HTML page suited for the display of the information contained within the notes document.

* * *

FIG. 20 is a table which lists the configuration of the specially defined extended HTML tags incorporated as part of the preferred embodiment. The defined functions associated with the extended tags are stored within the HTML skeleton file 750. As discussed briefly above, the generated HTML documents are significantly different since the files are *dynamically* created rather than formed in a static format. That is, rather than coding the text of an HTML document as a set template, the HTML code includes extended tags which typically are defined to call sophisticated functions depending upon the actual data which is provided for input to the HTML skeleton files from the database entry. Thus, the format of the HTML files will vary as a function of the requested entry's data which is provided for input to the HTML skeleton files. In this manner, the note search engine 730 *dynamically* constructs the HTML document in accordance with the data parameters.

('474 Patent at 2:59-62, 17:58-64 & 25:59-26:8.) Also, the specification refers to values being

"automatically inherited" (emphasis added):

The data contained within the geographic database 210 also includes reference fields 1305 which include a reference city, reference region, reference state, province or territory, reference country, reference continent, and reference world values. These values are the parentage name keys related to the current entry, and provide the key to displaying related entries to the internet user, and are *automatically inherited* from the parent entry. These reference values are used to retrace the path back through the geographic hierarchy when the user wishes to return to a related (e.g., parent) location display screen.

* * *

The data stored within the geographic database 210 further includes label fields 1315 which include text fields shown to the user as folder titles (i.e., listed areas

23

under the selected geographic area) for each of the parent geographic entries related to the current entry.  Text fields are included for cities, regions, states, provinces or territories, countries, or continents.  For example, if the user selects the state of California as the current entry, then the names of the parent geographic areas related to the state of California (i.e., the United States of America, North America, and the World) will be taken from the label field 1315 and displayed in the HTML document.  In addition, the children entries related to the state of California are then inserted beneath the "California" entry by the geographical search engine 315 based upon the value of the Dbview parameter, as will be discussed in greater detail below.  The label field 1315 is *automatically inherited* from the parent entry, and the values within the label field 1315 should not be changed.

(*Id.* at 19:29-63.)

Geomas considered the Examiner's interpretation and the disclosures in the specification and concluded that "replicating" meant "copying or inheriting" and that "dynamically replicating" meant "automatically copying or inheriting, at the time needed rather than at a time decided or established in advance."  *Geomas* at 22-23.  Plaintiff proposes that the Court adopt the *Geomas* constructions.

Defendants propose to "clarify that dynamic replication occurs into a geographical area *in the database*," rather than in the displaying of search results.  (Dkt. No. 361, at 23 (emphasis added).)  Although Defendants cite *Geomas*, the Court's *Geomas* decision did not directly address whether replication occurs in the database or in the search engine.

Claim 1 recites (emphasis added):

1.  A system which associates on-line information with geographic areas, said system comprising:
a computer network wherein a plurality of computers have access to said computer network; and
an organizer executing in said computer network, wherein said organizer is configured to receive search requests from any one of said plurality of computers, said organizer comprising:
*a database of information organized into a hierarchy of geographical areas* wherein entries corresponding to each one of said hierarchy of geographical areas is further organized into topics; and

24

a search engine in communication with said database, said search engine configured to search geographically and topically, said search engine further configured to [s]elect one of said hierarchy of geographical areas prior to selection of a topic so as to provide a geographical search area wherein *within said hierarchy of geographical areas* at least one of said entries associated with a b[roa]der geographical area is *dynamically replicated* into at least o[n]e narrower geographical area, said search engine further configure[d] to search said topics within said selected geographical search area.

On balance, the best reading of the plain language of the claim is that dynamic replication occurs within the database, as Defendants have proposed, because "dynamically replicat[ing]" is recited as "within said hierarchy of geographical areas," which in turn is recited as being a feature of the database.

Also, as agreed upon in *Geomas* and as is evident from the above-quoted portions of the specification, the significance of the constituent term "dynamically" is that entries are replicated "at the time the entry is needed, rather than at a time that is decided or established in advance." *Geomas* at 22-23.

Finally, although Defendants propose that omitting the word "inheriting" from the Court's constructions would be "simpler for the fact finder to understand" and would "accurately reflect[] the definition of 'replicating'" (Dkt. No. 361, at 26), the inclusion of "inheriting" is supported by the specification and the prosecution history, as discussed above.

The Court therefore hereby construes the disputed terms as set forth in the following chart:

| Term | Construction |
|---|---|
| **"replicating"** | **"copying or inheriting"** |
| **"replicated"** | **"copied or inherited"** |

| "dynamically replicating" | "automatically copying or inheriting, within the database, at the time needed rather than at a time decided or established in advance" |
| --- | --- |
| "dynamically replicated" | "automatically copied or inherited, within the database, at the time needed rather than at a time decided or established in advance" |

**D. "hierarchy" (Claims 1, 5 & 20), "hierarchically organized" (Claims 16, 32 & 35), "hierarchy of geographical areas" (Claims 1, 4 & 20), and "wherein said geographical areas are hierarchically organized" (Claim 32)**

| "hierarchy" (Claims 1, 5 & 20) and "hierarchically organized" (Claims 16, 32 & 35) ||
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| "an arrangement of related information or data, ordered from broader general categories to narrower specific ones" | This term need not be construed separately from "hierarchy of geographical areas." |

| "hierarchy of geographical areas" (Claims 1, 4 & 20) ||
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| "an arrangement of related information or data, ordered from broader general categories to narrower specific ones" | "related geographical areas, ordered such that broader geographic areas encompass narrower geographic areas" |

| "wherein said geographical areas are hierarchically organized" (Claim 32) ||
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| "wherein said geographical areas are ordered from broader geographical categories to narrower geographical categories" | "entries are ordered into geographic areas within the database, such that a broader geographic area encompasses narrower geographic areas" |

(Dkt. No. 354, at 7 & 9; Dkt. No. 361, at 32.)

Plaintiff argues that "hierarchy" and the related terms are used generically and do not describe any specific database structure.  (Dkt. No. 354, at 7.)  Plaintiff urges that "the claims do not require the 'hierarchy of geographical areas' to have a tree-like structure in which broader areas encompass[] narrower areas."  (*Id.*)  Plaintiff also argues claim differentiation as to dependent Claim 5.  (*Id.*)

Defendants respond that "Defendants do not contend that the database must be structured as a 'hierarchical database,'" but "[w]hatever the database structure may be, the claims require that the information within the database must be organized into a hierarchy of geographical areas."  (Dkt. No. 361, at 33.)  As to Plaintiff's claim differentiation argument, Defendants respond that "[c]laim differentiation . . . does not apply because Claim 5 adds multiple limitations unrelated to the meaning of 'hierarchy of geographical areas,'" such as the requirement of a three-level hierarchy rather than merely a two-level hierarchy as required by Claim 1.  (*Id.*, at 35.)

In reply, Plaintiff re-urges claim differentiation and reiterates that *Geomas* rejected Defendants' proposal that larger geographic areas must encompass smaller geographic areas.  (Dkt. No. 365, at 3.)

At the February 12, 2013 hearing, Defendants emphasized disclosure in the specification of continents encompassing countries, which in turn encompass states, and so forth.  Defendants also noted several statements in Plaintiff's technology tutorial to the Court that referred to smaller geographic areas "contained in" larger geographic areas.

(2)  Analysis

Plaintiff argues claim differentiation as between Claims 1 and 5, which recite:

1.  A system which associates on-line information with geographic areas, said system comprising:

a computer network wherein a plurality of computers have access to said computer network; and

an organizer executing in said computer network, wherein said organizer is configured to receive search requests from any one of said plurality of computers, said organizer comprising:

a database of information organized into a hierarchy of geographical areas wherein entries corresponding to each one of said hierarchy of geographical areas is further organized into topics; and

a search engine in communication with said database, said search engine configured to search geographically and topically, said search engine further configured to [s]elect one of said hierarchy of geographical areas prior to selection of a topic so as to provide a geographical search area wherein within said hierarchy of geographical areas at least one of said entries associated with a b[roa]der geographical area is dynamically replicated into at least o[n]e narrower geographical area, said search engine further configure[d] to search said topics within said selected geographical search area.

* * *

5.  The system of claim 1, wherein said hierarchy has a structure comprising plural geographical levels into which the geographical areas are geographically categorized by size to provide a low level, one or more intermediate levels and a high level, each of the geographical levels above the lowest level encompassing a plurality of lower level geographical areas.

The doctrine of claim differentiation is unpersuasive here, if applicable at all, because Claim 5 is differentiated not only in the recital of "each of the geographical levels above the lowest level encompassing a plurality of lower level geographical areas" but also in the recital of at least three levels ("low," "intermediate," and "high").  *See Wenger*, 239 F.3d at 1233 ("Claim differentiation, while often argued to be controlling when it does not apply, is clearly applicable when there is a dispute over whether a limitation found in a dependent claim should be read into an independent claim, *and that limitation is the only meaningful difference between the two claims*.") (emphasis added); *Rembrandt*, 2012 WL 4017470, at *9 ("There is no reason to apply

the doctrine of claim differentiation, however, where, as here, the district court's construction does not render any claim redundant or superfluous.").

In *Geomas*, the parties disputed whether the "hierarchy" terms required "tree-like" structures wherein "parents can have multiple children, but each child can only have one parent." *Geomas* at 8-9. The specification discloses:

> As used herein, a "parent" entry is an entry (e.g., geographic or topical) which encompasses one or more children entries within the geographic or topical hierarchy, and a "child" entry is an entry which is encompassed by a parent entry within the geographical or topical hierarchy.

('474 Patent at 12:28-32.) *Geomas* concluded that limiting the claims to this preferred embodiment would be improper, but the Court in *Geomas* nonetheless noted that there must be some relationship between entries. *Geomas* at 10.

On balance, having considered the briefing and oral argument presented in the present case, the Court reaches the same conclusions reached in *Geomas* and hereby construes the disputed terms as set forth in the following chart:

| Term | Construction |
|------|--------------|
| **"hierarchy"** <br><br> **"hierarchically organized"** | **"an arrangement of related information or data, ordered from broader general categories to narrower specific ones"** |
| **"hierarchy of geographical areas"** | **"an arrangement of related information or data, ordered from broader geographical categories to narrower geographical categories"** |
| **"wherein said geographical areas are hierarchically organized"** | **"wherein said geographical areas are ordered from broader geographical categories to narrower geographical categories"** |

**E. "a database of information organized into a hierarchy of geographical areas" (Claim 1) and "said database of information organized into a predetermine[d] hierarchy of geographical areas" (Claim 20)**

| "a database of information organized into a hierarchy of geographical areas" (Claim 1) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| "a collection of interrelated information or data organized such that a computer program can quickly retrieve selected information or data, ordered from broader geographical categories to narrower geographical categories" | "entries are ordered into geographic areas within the database, such that a broader geographic area encompasses narrower geographic areas" |

| "said database of information organized into a predetermine[d] hierarchy of geographical areas" (Claim 20) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| "a collection of interrelated information or data organized such that a computer program can quickly retrieve selected information or data, ordered from broader geographical categories to narrower geographical categories that are decided or established in advance" | Same as the related term in Claim 1. |

(Dkt. No. 354, at 16; Dkt. No. 361, at 32.)

(1)  The Parties' Positions

Plaintiff submits that its "proposed construction recognizes that it is the organization or association of the data in hierarchies that is important, not the type of hierarchy, specific data format, or specific type of database employed."  (Dkt. No. 354, at 17.)

Defendants argue these terms together with the "hierarchy" terms discussed in subsection III.D., above.  (*See* Dkt. No. 361, at 32.)

(2)  Analysis

In *Geomas*, the Court found that the claims did *not* require a hierarchical database:

Geomas first argues that the plain and ordinary language of Claim 1 indicates that it is "information" that is organized into a hierarchy of geographic areas, not the database itself. The specification supports this construction. In the specification, the patent refers to the structure of the database only one time within the patent[: "Typically, such on-line computer service provides access to a hierarchically structured database . . . ." '474 Patent, col. 1, l. 15 - 16]. Throughout the remainder of the specification, the patent describes databases as containing information or data, but not according to any structure. Finally, that the patentees used the term "hierarchically structured database" and "LOTUS/NOTES database environment" in the specification, but did not do so in the claims, strongly implies that the inventors did not intend that the claims be limited to a particular type of database. *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 807 (Fed. Cir. 2007).

*Geomas* at 12 & n.9.

Having considered the parties' briefing and oral arguments in the present case, the Court adopts the analysis of *Geomas*. *Id.* The Court nonetheless concludes that except as to the constituent term "predetermined" in Claim 20, no construction of the disputed terms is required apart from the Court's construction of the constituent "database" and "hierarchy" terms, above. As to "predetermined," the parties have essentially agreed that the term means "decided or established in advance," and the Court construes "predetermined" according. The Court therefore hereby construes the disputed terms as set forth in the following chart:

| Term | Construction |
|---|---|
| **"a database of information organized into a hierarchy of geographical areas" (Claim 1)** | **No construction is necessary apart from the Court's separate construction of constituent terms.** |
| **"said database of information organized into a predetermine[d] hierarchy of geographical areas" (Claim 20)** | **No construction is necessary apart from the Court's separate construction of constituent terms except that "predetermined" is hereby construed to mean "decided or established in advance."** |

**F. ". . . dynamically replicated into at least one narrower geographical area" (Claim 1), ". . . dynamically replicated into at least one of said geographical areas of smaller expanse" (Claim 20), and "dynamically replicating an entry from broader geographical area into said geographical search area" (Claim 31)**

| "wherein within said hierarchy of geographic areas at least one of said entries associated with a b[roa]der geographical area is dynamically replicated into at least o[n]e narrower geographical area" (Claim 1) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| "wherein within the hierarchy of geographical areas, at the time needed rather than at a time decided or established in advance, at least a piece of data in a database associated with a broader geographical area is automatically copied or inherited into at least one narrower geographical area" | "automatically copying at least one entry associated only with a broader geographical area within the database into at least one of the encompassed narrower geographical areas within the database at the time of a search rather than at a time established in advance"<br><br>Canon's proposed construction: "automatically copying at least one entry associated only with a broader geographical area within the database into at least one of the encompassed narrower geographical <u>search</u> areas within the database at the time of a search rather than at a time established in advance"<br><br>(underlining added) |

| "wherein at least one of said entries in said geographical area of relatively larger expanse is dynamically replicated into at least one of said geographical areas of smaller expanse" (Claim 20) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| "wherein within the hierarchy of geographical areas, at the time needed rather than at a time decided or established in advance, at least a piece of data in a database associated with a broader geographical area is automatically copied or inherited into at least one narrower geographical area" | "automatically copying at least one entry associated only with a larger geographical area within the database into at least one of the encompassed smaller geographical areas within the database at the time of a search rather than at a time established in advance"<br><br>Canon's proposed construction: "automatically copying at least one entry |

| | associated only with a larger geographical area within the database into at least one of the encompassed smaller geographical <u>search</u> areas within the database at the time of a search rather than at a time established in advance"<br><br>(underlining added) |
| --- | --- |

| **"dynamically replicating an entry from broader geographical area into said geographical search area" (Claim 31)** | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| "automatically copying or inheriting, at the time needed rather than at a time decided or established in advance, at least a piece of data contained in a database that is associated with a broader geographical area into an area from which topical information can be accessed that is a subset of that broader geographical area" | "automatically copying an entry associated only with a broader geographical area within the database into the encompassed narrower geographical search area within the database at the time of a search rather than at a time established in advance" |

(Dkt. No. 354, at 11-12; Dkt. No. 361, at 22-23; s*ee* P.R. 4-5(d) Chart, at 5-6; *see also* Dkt. No. 383, 2/6/2013 Defendant Canon U.S.A., Inc.'s Supplemental Markman Brief, at 1.)

<u>(1) The Parties' Positions</u>

Defendants argue that "according to the plain language of the claim[s], the recited 'larger' and 'smaller' geographical areas are within the database, and the dynamic replication likewise occurs within the database." (Dkt. No. 361, at 28.) Defendants also urge that "the entry that is dynamically replicated is only associated with the claimed broader geographical area" and "the area into which the entry is replicated is a narrower geographic area that is encompassed by the broader area." (*Id.*, at 28 & 29.) Defendants nonetheless note that "[n]othing in Defendants' construction of these terms suggests that the database has to be hierarchical." (*Id.*, at 29.) Defendants argue that Plaintiff's proposals should be rejected because they "allow for the

dynamic replication of any 'piece of data contained in a database,' regardless of whether it is an entry or not."  (*Id.*, at 30.)

Plaintiff replies that larger geographic areas need not encompass smaller geographic areas, that geographic areas need not be within a database, and that the dynamically replicated entry need not be associated only with a larger geographic area.  (*Id.*, at 8.)

In its supplemental brief, Canon submits that "the 'dynamic replication' of an entry associated with a broader geographical area is ultimately copied into the encompassed narrower 'geographical *search* area.'"  (Dkt. No. 383, at 2.)  Canon argues that "unless 'dynamic replication' means that entries are ultimately copied into the geographical search area to be topically searched, these claim elements are reduced to a disassociated group of functions with no clear interrelationship, and which clearly do not perform the function that the patentee (with the examiner's concurrence) argued distinguished the invention over the prior art."  (*Id.*, at 4.) At the February 12, 2013 hearing, Canon urged that the Examiner's Reasons for Allowance should be given weight pursuant to *ACCO Brands, Inc. v. Micro Security Devices, Inc.*, 346 F.3d 1075 (Fed. Cir. 2003).

Plaintiff has responded that "[t]here can be no dispute that the language of claim 1 clearly demonstrates that the 'geographical search area' limitation is distinct from the 'narrower geographical area.'"  (Dkt. No. 399, at 2.)  Plaintiff also contrasts Claims 1 and 20 with Claim 31, which recites, in relevant part (emphasis added): "dynamically replicating an entry from broader geographical area into said geographical *search* area."  (*Id.*, at 3.)

Finally, in their letter brief, the WMA Defendants argue that the "dynamically replicated" terms render the asserted claims indefinite because whereas "all parties agree that dynamic replication, as recited in the claims, describes a search-engine function," "there is nothing in the

34

'474 patent specification that describes a search engine performing dynamic replication."  (Dkt. No. 401, at 2.) [4]  The WMA Defendants argue that the disclosure that values are "automatically inherited" relates to creation of database entries, not to any search engine function.  (*Id.*, at 4-5.) The WMA Defendants cite *Wang Laboratories, Inc. v. America Online, Inc.*, 197 F.3d 1377 (Fed. Cir. 1999) and conclude that "[b]ecause there is no construction that is supported by the specification, the claims fail to meet the requirements of 35 U.S.C. § 112."  (*Id.*, at 5-6.)

Plaintiff, in its responsive letter brief, argues that the WMA Defendants have failed to show that the "dynamically replicated" terms cannot be construed.  (Dkt. No. 404, at 1.)  Plaintiff argues that the WMA Defendants have themselves interpreted the terms, and Plaintiff notes that the PTO, this Court, and hundreds of other Defendants in the above-captioned consolidated case have all found the terms to be amenable to construction.  (*Id.*, at 2.)  Plaintiff urges that contrary

---

[4] At the February 12, 2013 hearing, counsel for the WMA Defendants and counsel for Plaintiff confirmed the Court's understanding of how the parties came to submit letter briefing rather than supplemental briefing: In accordance with the Court's August 30, 2012 First Amended Scheduling and Discovery Order (Dkt. No. 305, at 21-22), the WMA Defendants filed a letter brief requesting permission to file a supplemental claim construction brief regarding indefiniteness, and Plaintiff responded in opposition.  Shortly after ordering consolidation of multiple cases into the above-captioned case, the Court granted the WMA Defendants' request and set a briefing schedule.  (Dkt. No. 381, 2/5/2013 Order.)  On the day of the deadline for Plaintiff to file a response, Plaintiff filed a Notice stating that because the WMA Defendants had not filed any supplemental claim construction brief, Plaintiff assumed that Defendants were no longer arguing indefiniteness.  (Dkt. No. 398, 2/11/2013 Notice.)  Within hours, the WMA Defendants filed an Unopposed Motion for Leave to re-file their letter brief, explaining that Defendants' counsel had not received notice of the Court's order granting leave to file supplemental briefing.  (Dkt. No. 400.)  Evidently, because of the close proximity between the consolidation order and the order granting the WMA Defendants leave to file a supplemental brief, the latter order was electronically sent to counsel for the original parties in the above-captioned case but not to any counsel for the consolidated parties, such as the WMA Defendants. The WMA Defendants re-filed their letter brief and Plaintiff re-filed its responsive letter brief. (Dkt. Nos. 401 & 404.)  In light of all of these unique circumstances, the Court permitted the letter briefing in lieu of supplemental briefing, and the Court heard oral arguments regarding indefiniteness at the February 12, 2013 hearing.

to the WMA Defendants' assertion, the claims of the '474 Patent do not limit dynamic replication to being a search engine function.  (*Id.*, at 3.)  Moreover, Plaintiff argues, the specification discloses an embodiment in which an entry is dynamically replicated from a broader geographical area into another area by the search engine.  (*Id.*, at 4 (citing '474 Patent at 19:57-61).)  Finally, Plaintiff submits that although "[t]he specification describes values 'automatically inherited' from a parent entry to a child entry in the context of database creation," "t[his] example does not limit 'automatically inherited' to occurring only during database creation."  (*Id.* (citing '474 Patent at 19:29-39).)

At the February 12, 2013 hearing, the WMA Defendants argued that the portion of the specification relied upon by Plaintiffs relates to the search engine copying data to an HTML document for display, not copying within the database.  The WMA Defendants further argued that in response to a restriction requirement during prosecution, the patentee elected to pursue search engine claims rather than display-related claims.

(2)  Analysis

As to Canon's proposal for Claims 1 and 20, the Examiner's Reasons for Allowance state that the allowed claims were allowable because "[t]he prior art of record does not teach the following:"

> a method for locating on-line information comprising the following steps:
> organizing a database of on-line information into a plurality of geographical areas, wherein each of said geographical areas have a plurality of associated entries;
> further organizing said entries into more than one topic;
> directing a search engine executing in a computer to select one or more of said geographical areas as a geographical search area;
> automatically inheriting an entry from a broader geographical area into said selected geographical *search* area, and
> displaying said topics associated with said geographical search area as disclosed by applicants['] specification.

36

(Dkt. No. 354, Ex. G, 12/21/1998 Notice of Allowability, at 3 (emphasis added).)

Claim 1, by contrast, recites (emphasis added):

1.  A system which associates on-line information with geographic areas, said system comprising:
    a computer network wherein a plurality of computers have access to said computer network; and
    an organizer executing in said computer network, wherein said organizer is configured to receive search requests from any one of said plurality of computers, said organizer comprising:
        a database of information organized into a hierarchy of geographical areas wherein entries corresponding to each one of said hierarchy of geographical areas is further organized into topics; and
        a search engine in communication with said database, said search engine configured to search geographically and topically, said search engine further configured to *[s]elect one of said hierarchy of geographical areas* prior to selection of a topic so as to provide a *geographical search area* wherein *within said hierarchy of geographical areas at least one of said entries associated with a b[roa]der geographical area is dynamically replicated into at least o[n]e narrower geographical area*, said search engine further configure[d] to search said topics within *said selected geographical search area.*

Claim 1 thus recites a "geographical search area" separately from "a b[roa]der geographical area" and "at least o[n]e narrower geographical area."  Claim 20 is similar.  Claims 1 and 20 are thus distinct from Claim 31, which recites in relevant part (emphasis added): "dynamically replicating an entry from [a] broader geographical area into said geographical *search* area."

The *ACCO Brands* case cited by Canon suggests that an examiner's Reasons for Allowance may apply to all allowed claims if neither the examiner nor the patentee distinguished the claims from one another.  *ACCO Brands*, 346 F.3d at 1079.  Canon has not demonstrated, however, that "in this case the examiner simply repeated the arguments that the patentee had presented."  *Id.*  The Court therefore applies the more general principle that "there is no obligation to respond to an examiner's statement of Reasons for Allowance, and the statement of

an examiner will not necessarily limit a claim." *Id.* (citation omitted); *see Salazar*, 414 F.3d at 1347 (finding that "the applicant's silence [in response] to the examiner's remarks in the Examiner's Statements of Reasons for Allowance" "do[es] not amount to a clear disavowal of claim scope by the applicant," at least where the patentee made no other relevant statements). Canon's proposal to rewrite Claims 1 and 20 is expressly rejected. *See K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee.").

As to the WMA Defendants' argument that the asserted claims are indefinite, indefiniteness is a "legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Exxon Research & Eng'g Co. v. U.S.*, 265 F.3d 1371, 1376 (Fed. Cir. 2001) (citation omitted). A finding of indefiniteness must overcome the statutory presumption of validity. *See* 35 U.S.C. § 282. That is, the "standard [for finding indefiniteness] is met where an accused infringer shows by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant art area." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008).

> In determining whether that standard is met, i.e., whether the claims at issue are sufficiently precise to permit a potential competitor to determine whether or not he is infringing, we have not held that a claim is indefinite merely because it poses a difficult issue of claim construction. We engage in claim construction every day, and cases frequently present close questions of claim construction on which expert witnesses, trial courts, and even the judges of this court may disagree. Under a broad concept of indefiniteness, all but the clearest claim construction issues could be regarded as giving rise to invalidating indefiniteness in the claims at issue. But we have not adopted that approach to the law of indefiniteness. We have not insisted that claims be plain on their face in order to avoid condemnation for indefiniteness; rather, what we have asked is that the claims be amenable to construction, however difficult that task may be. If a claim is insolubly ambiguous, and no narrowing construction can properly be adopted,

we have held the claim indefinite. If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds. . . . By finding claims indefinite only if reasonable efforts at claim construction prove futile, we accord respect to the statutory presumption of patent validity . . . and we protect the inventive contribution of patentees, even when the drafting of their patents has been less than ideal.

*Exxon*, 265 F.3d at 1375 (citations and internal quotation marks omitted).

The *Wang Laboratories* case cited by Defendants is distinguishable. In *Wang Laboratories*, as Defendants summarize, "the plaintiff proposed a construction for the term 'frame' as including both bit-mapped systems and character-based systems," "but the specification described only character-based systems." (Dkt. No. 401, at 5.) In the above-captioned case, by contrast, the specification suggests that copying of an entry from one area into another can be performed by a search engine:

> The data stored within the geographic database 210 further includes label fields 1315 which include text fields shown to the user as folder titles (i.e., listed areas under the selected geographic area) for each of the parent geographic entries related to the current entry. Text fields are included for cities, regions, states, provinces or territories, countries, or continents. For example, if the user selects the state of California as the current entry, then the names of the parent geographic areas related to the state of California (i.e., the United States of America, North America, and the World) will be taken from the label field 1315 and displayed in the HTML document. In addition, the children entries related to the state of California are then inserted beneath the "California" entry by the geographical search engine 315 based upon the value of the Dbview parameter, as will be discussed in greater detail below. The label field 1315 is automatically inherited from the parent entry, and the values within the label field 1315 should not be changed.

('474 Patent at 19:46-63.) Indeed, the WMA Defendants appear to acknowledge that the claims are amenable to construction when they state that "[i]n sum, each asserted claim contains a dynamic-replication limitation that requires the search engine to replicate an entry from a broader area into a narrower one in the database." (*Id.*, at 6.) On balance, the WMA Defendants

39

have failed to meet their burden to establish "by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant art area." *Halliburton*, 514 F.3d at 1249-50.

Finally, although the WMA Defendants' letter brief cites 35 U.S.C. § 112, ¶ 2, which is the paragraph pertaining to indefiniteness, the brief repeatedly refers to lack of written description (*see* Dkt. No. 401, at 3, 5 & 6), which falls under 35 U.S.C. § 112, ¶ 1. To whatever extent the WMA Defendants are arguing for a finding of invalidity based on lack of written description, such an analysis is generally not a proper part of claim construction, particularly because failure to satisfy the written description requirement is a question of fact. *Phillips*, 415 F.3d at 1327 ("[W]e have certainly not endorsed a regime in which validity analysis is a regular component of claim construction."); *Laryngeal Mask Co. Ltd. v. Ambu A/S*, 618 F.3d 1367, 1373 (Fed. Cir. 2010) ("Compliance with the written description requirement is a question of fact.") (quoting *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1376 (Fed. Cir. 2009)).

As to the proper constructions of the disputed terms, no further construction is necessary in light of the Court's constructions of the "hierarchy," "dynamically replicated," and "database" terms and the rejection of Defendants' proposals as set forth above. The disputed terms are therefore hereby construed as set forth in the following chart:

| Term | Construction |
|---|---|
| **"wherein within said hierarchy of geographic areas at least one of said entries associated with a broader geographical area is dynamically replicated into at least one narrower geographical area" (Claim 1)** | **No construction is necessary apart from the Court's separate construction of constituent terms.**<br><br>**Defendants' proposed constructions, including Canon's separately proposed construction, are hereby expressly rejected.** |
| **"wherein at least one of said entries in said geographical area of relatively larger expanse is dynamically replicated into at least one of said geographical areas of smaller expanse" (Claim 20)** | **No construction is necessary apart from the Court's separate construction of constituent terms.**<br><br>**Defendants' proposed constructions, including Canon's separately proposed construction, are hereby expressly rejected.** |
| **"dynamically replicating an entry from broader geographical area into said geographical search area" (claim 31)** | **No construction is necessary apart from the Court's separate construction of constituent terms.**<br><br>**Defendants' proposed construction is hereby expressly rejected.** |

**G. "geographical search area" (Claims 1, 20 & 31)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "the particular selected geographical area for which the associated data records in the database are to be searched" | "the particular geographical area within the database selected by the search engine whose entries are to be searched" |

(Dkt. No. 354, at 11; Dkt. No. 361, at 36.)

<u>(1) The Parties' Positions</u>

Plaintiff urges that Defendants' proposal "seeks to erroneously limit the system to a database having a hierarchical structure in which the narrower areas are 'encompassed' within the broader areas, an argument rejected by the court in *Geomas*." (Dkt. No. 354, at 14.)

Defendants respond that their proposal "remains true to both the claim language and the specification by properly identifying (i) where the geographical search area is located ('within the database'), (ii) what selects the area ('the search engine'), and (iii) what is searched in the area ('entries')." (Dkt. No. 361, at 36.) Defendants argue that Plaintiff's proposal of "associated data records" is incorrect because the claims refer to entries, not data records. (*Id.*, at 37.)

Plaintiff replies that because Claim 1 recites that the search engine provides a geographical search area, the geographical search area is not required to be within the database. (Dkt. No. 365, at 7.) Plaintiff also argues that Claims 1, 20, and 31 all contemplate that something other than the search engine can select a geographical search area. (*Id.*, at 8.)

(2) Analysis

Claim 31, for example, recites (emphasis added):

31. A method for locating on line[5] information comprising the steps of:
　　organizing a database of on-line information into a plurality of geographical areas, said geographical areas having a plurality of entries associated therewith;
　　organizing said entries corresponding to said plurality of geographical areas into one or [m]ore topics;
　　directing a search engine executing in a computer to select one or more of said geographical areas so as to select a *geographical search area*;
　　dynamically replicating an entry from [a] broader geographical area into said *geographical search area*; and
　　displaying said topics associated with sa[i]d *geographical search area.*

The specification discloses searching within a desired "geographical search area" (emphasis added):

In accordance with the teachings of the preferred embodiment, the web organizer server 114, together with other like servers in communication with the ethernet

_____

[5] The parties have not attributed any significance to the absence of a hyphen in "on line" in the preamble of Claim 31 as opposed to the presence of a hyphen in "on-line" elsewhere.

link 110 (i.e., in communication with the Internet access provider), provides subscribing users with a *geographically organized perspective* of the information available by accessing the Internet. Thus, if a user is interested in finding an out-of-print book, or a good price on his favorite bottle of wine, but does not want to travel outside of the Los Angeles area to acquire these goods, then the user can simply designate the Los Angeles area as a *geographic location* for which a topical search is to be performed. In this example, the Los Angeles area defines a *geographical search area, wherein the geographical search area is defined as a[n] area from which topical information can be accessed, and which is a subset of the entire domain of geographic areas which can be searched for topical information*. Thus, the *geographic/topical organization format* provided in accordance with the preferred embodiment provides the user with a valuable Internet organizing tool, since current Internet search techniques might allow the user to find the information which he is interested in, but at an undesirable location so that the user may be required to search for hours in order to find the goods or services in which he is interested at the appropriate *geographic areas*.

('474 Patent at 7:5-30.)

As found in *Geomas*, "there is no indication that the patentee intended this [passage] to define the term [(geographical search area)] universally throughout the patent." *Geomas* at 19. The references to "preferred embodiment" and "[i]n this example" in the above-quoted passage confirm such a reading. Further, this passage contemplates that the geographical search area is selected by the user, not the search engine. Defendants' proposal that the geographical search area must be "selected by the search engine" is therefore rejected.

Finally, as noted regarding the "dynamically replicated" terms, the geographic areas are recited by the claims as being within the database.

The Court therefore hereby construes **"geographical search area"** to mean **"the particular selected geographical area within the database for which the associated data records in the database are to be searched."**

**H.  "organizing a database of on-line information into a plurality of geographical areas" (Claim 31)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "organizing a collection of information that is capable of being accessed by a computer into more than one geographical area" | "at the time the database is being organized, ordering entries of on-line information into geographic areas within the database" |

(Dkt. No. 354, at 18; Dkt. No. 361, at 38.)

(1)  The Parties' Positions

Plaintiff argues that "Defendants' construction is not supported by the specification and improperly narrows the claims because it requires ordering 'at the time the database is being organized' and requires that the geographic areas must be 'within the database.'"  (Dkt. No. 354, at 18.)

Defendants respond that their proposal "clarifies that entries must be ordered into geographic areas within the database at the time the database is being organized."  (Dkt. No. 361, at 38.)

Plaintiff replies that "[t]here is no alleged 'temporal ambiguity' in the claim and it is improper to impose a specific order of steps absent an indication to do so."  (Dkt. No. 365, at 10.)  Plaintiff also argues that Defendants' proposal "erroneously substitutes 'ordering' for 'organization'" and that Defendants "once again . . . erroneously attempt to limit the geographic areas to areas 'within the database,' which is not supported by the intrinsic evidence."  (*Id.*)

(2)  Analysis

Claim 31 recites (emphasis added):

31.  A method for locating on line information comprising the steps of:
  *organizing a database of on-line information into a plurality of geographical areas*, said geographical areas having a plurality of entries associated therewith;

44

organizing said entries corresponding to said plurality of geographical areas into one or [m]ore topics;

directing a search engine executing in a computer to select one or more of said geographical areas so as to select a geographical search area;

dynamically replicating an entry from [a] broader geographical area into said geographical search area; and

displaying said topics associated with sa[i]d geographical search area.

First, both sides include "organizing" or "organized" in their proposals, so the constituent term "organizing" need not be construed. Also, Defendants have not shown any support for introducing a limitation of "ordering."

Second, neither the claim language nor the specification place any "temporal" requirement, as Plaintiff characterizes it, on when "organizing" must be done. In addition, the Field of the Invention states: "The present invention relates to network interfaces which act to organize information accessible on the network and, in particular, to an Internet browser interface which acts to organize information available on the Internet based upon geographical distribution." ('474 Patent at 1:5-10.) This broad use of "organize" counsels against introducing any temporal limitation. Defendants' proposal of "at the time the database is being organized" is therefore expressly rejected.

Defendants' proposal that the geographical areas are "within the database" is addressed by the plain language of the disputed term and by the Court's construction of the "dynamically replicated" terms, above. The present term therefore need not be construed to state that the geographical areas are "within the database."

Finally, that "plurality" means "more than one" is evident from the plain language of the disputed term and is not disputed by the parties.

The Court therefore hereby construes **"organizing a database of on-line information into a plurality of geographical areas"** to have its **plain meaning** in the context of the Court's

constructions of constituent terms and the findings set forth in this subsection. Defendants' proposal of "at the time the database is being organized" is hereby expressly rejected.

**I. "search engine" (Claims 1, 20 & 31)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "software, hardware, and/or firmware that alone or in combination receives search requests and fulfills the received requests through interaction with a database" | No construction required |

(Dkt. No. 354, at 19.)

<u>(1) The Parties' Positions</u>

Plaintiff argues that "[t]he claim language . . . describes a generic search engine that is configured to search both geographically and topically." (Dkt. No. 354, at 19.)

Defendants present no separate argument on this term and instead submit only that no construction is required. (*See* Dkt. No. 361.)

<u>(2) Analysis</u>

As Plaintiff points out, the specification uses the term "search engine" generically as something that fulfills search requests through interaction with a database, such as in the context of a "geographical search engine," a "local content search engine," a "yellow pages search engine," or a "note search engine." (*See* '474 Patent at 18:10-54.) Having considered the briefing and the '474 Patent as a whole, the Court reaches substantially the same conclusion here as the Court reached in *Geomas*.

The Court therefore hereby construes **"search engine"** to mean **"device or application that receives search requests and fulfills the received requests through interaction with a database."**

**J. "said search engine further configured to select one of said hierarchy of geographical areas prior to selection of a topic so as to provide a geographical search area" (Claim 1), "said search engine configured to select at least one geographical area in said hierarchy of geographical areas so as to define a geographical search area" (Claim 20), and "directing a search engine executing in a computer to select one or more of said geographical areas so as to select a geographical search area" (Claim 31)**

| **"said search engine further configured to select one of said hierarchy of geographical areas prior to selection of a topic so as to provide a geographical search area" (Claim 1)** ||
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposal** |
| "that the software, hardware and/or firmware, alone or in combination, that receives search requests and fulfills the received requests through interaction with a database is configured to select one of the hierarchy of geographical areas prior to the selection of a topic so as to define an area from which topical information can be accessed that is a subset of the entire domain of geography" | No construction required |

| **"said search engine configured to select at least one geographical area in said hierarchy of geographical areas so as to define a geographical search area" (Claim 20)** ||
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposal** |
| "the software, hardware and/or firmware, alone or in combination, that receives search requests and fulfills the received requests through interaction with a database is configured to select one of the hierarchy of geographical areas so as to define an area from which topical information can be accessed that is a subset of the entire domain of geography" | No construction required |

| **"directing a search engine executing in a computer to select one or more of said geographical areas so as to select a geographical search area" (Claim 31)** ||
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposal** |
| "directing software, hardware, and/or firmware executing in a computer, alone or in combination to select one or more geographical areas so as to select an area from which topical information can be accessed that is a subset of the entire domain of geography" | No construction required |

(Dkt. No. 354, at 20; Dkt. No. 329, 10/11/2012 Joint Claim Construction and Prehearing

Statement, at 29.)

<u>(1) The Parties' Positions</u>

Plaintiff submits that its proposals are the constructions that the Court adopted in *Geomas* (Dkt. No. 354, at 21.)

Defendants present no separate argument on this term and instead submit only that no construction is required. (*See* Dkt. No. 361; Dkt. No. 329, 10/11/2012 Joint Claim Construction and Prehearing Statement, at 29.)

<u>(2) Analysis</u>

In *Geomas*, "[t]he key dispute with regard to these phrases [was] whether the patent requires that a geographic area be selected before a topic is selected." *Geomas* at 21. *Geomas* found that:

> Through the inclusion of "prior to," claim 1 expressly provides that the geographic area is selected before the topic. Claims 20 and 31 do not contain those words. Geomas argues that "prior to" should not be read into claims 20 and 31, and that neither of those claims require the selection of a geographic search area before a topic is selected. Geomas further argues that the prosecution history confirms that the order of steps is not important. Idearc argues that the plain language of the claims indicate an order. The court agrees with Geomas.

*Id.*

Having considered the briefing in the present case, the Court reaches the same conclusions here as the Court reached in *Geomas*. Nonetheless, because the constituent terms are construed elsewhere by the Court in this Memorandum Opinion and Order, no construction is required for the present disputed terms. The Court notes the parties' apparent agreement that Claim 1 requires an order of steps, as also discussed in *Geomas*, quoted above. To the extent, if any, that Defendants are proposing that the present disputed terms in Claims 20 and 31 require an order of steps, Defendants' proposals are expressly rejected. The Court therefore hereby construes the disputed terms as set forth in the following chart:

| Term | Construction |
|---|---|
| **"said search engine further configured to select one of said hierarchy of geographical areas prior to selection of a topic so as to provide a geographical search area"** | **No construction is necessary apart from the Court's separate construction of constituent terms.** |
| **"said search engine further configured to select at least one geographical area in said hierarchy of geographical areas so as to define a geographical search area"** | **No construction is necessary apart from the Court's separate construction of constituent terms.**<br><br>**To the extent, if any, that Defendants are proposing an order of steps, Defendants' proposal is hereby expressly rejected.** |
| **"directing a search engine executing in a computer to select one or more of said geographical areas so as to select a geographical search area"** | **No construction is necessary apart from the Court's separate construction of constituent terms.**<br><br>**To the extent, if any, that Defendants are proposing an order of steps, Defendants' proposal is hereby expressly rejected.** |

**K. "on-line information" (Claims 1 & 31)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "information capable of being accessed by a computer" | "information that is remotely accessible over a network" |

(Dkt. No. 354, at 17; Dkt. No. 361, at 41.)

(1)  The Parties' Positions

Plaintiff submits that the Background of the Invention and the Summary of the Invention both use the constituent term "on-line" to describe "access" to a network or to a database.  (Dkt. No. 354, at 18.)

Defendants respond that Plaintiff's proposal "essentially reads out the 'on-line' limitation of the claim, and reduces the term to 'information' in its most general sense—encompassing data

49

on a standalone computer that is isolated from all networks, or even on a second unrelated computer." (Dkt. No. 361, at 42.) In other words, Defendants argue, Plaintiff's proposal means that information "is 'on-line' if it can be accessed by the computer it is saved on." (*Id.*, at 43.)

Plaintiff replies that "[t]he '474 patent uses the term 'remotely' distinctly from 'on-line information'" because "if 'remotely accessible' means 'on-line,' then it would have been unnecessary in the '474 patent to state 'remotely accessible information in an on-line network.'" (Dkt. No. 365, at 9 (quoting '474 Patent at 3:32-33).)

(2) Analysis

Claim 31 recites, in relevant part (emphasis added):

31. A method for locating *on line*[6] *information* comprising the steps of:
　　organizing a database of *on-line information* into a plurality of geographical areas, said geographical areas having a plurality of entries associated therewith;
　　organizing said entries corresponding to said plurality of geographical areas into one or [m]ore topics;
　　directing a search engine executing in a computer to select one or more of said geographical areas so as to select a geographical search area;
　　dynamically replicating an entry from [a] broader geographical area into said geographical search area; and
　　displaying said topics associated with sa[i]d geographical search area.

The specification consistently discloses "on-line" in the context of computer networks, such as the Internet:

> *On-line* computer services, such as the Internet, have grown immensely in popularity over the last decade. Typically, such an *on-line* computer service provides access to a hierarchically structured database where information within the database is accessible at a plurality of computer servers which are in communication via conventional telephone lines or T1 links, and a network backbone. For example, the Internet is a giant internetwork created originally by

_____

[6] The parties have not attributed any significance to the absence of a hyphen in "on line" in the preamble of Claim 31 as opposed to the presence of a hyphen in "on-line" elsewhere.

linking various research and defense networks (such as NSFnet, MILnet, and CREN). Since the origin of the Internet, various other private and public networks have become attached to the Internet.

('474 Patent at 1:13-23 (emphasis added).)

> One popular computer *on-line* service is the Worldwide Web (WWW) which constitutes a subnetwork of *on-line* documents within the Internet. The WWW includes graphics files in addition to text files and other information which can be accessed using a network browser which serves as a graphical interface between the *on-line* WWW documents and the user. One such popular browser is the MOSAIC web browser (developed by the National Super Computer Agency (NCSA)[7]). A web browser is a software interface which serves as a text and/or graphics link between the user's terminal and the Internet networked documents. Thus, a web browser allows the user to "visit" multiple web sites on the Internet.

(*Id.* at 1:66-2:11 (emphasis added).)

> Although the Internet, together with other *on-line* computer services, has been used widely as a means of sharing information amongst a plurality of users, current Internet browsers and other interfaces have suffered from a number of shortcomings. For example, the organization of information accessible through current Internet browsers and organizers such as NETSCAPE or MOSAIC, may not be suitable for a number of desirable applications. In certain instances, a user may desire to access information predicated upon geographic areas as opposed to by subject matter or keyword searches. In addition, present Internet organizers do not effectively integrate the topical and geographically based information in a consistent manner.

(*Id.* at 2:20-32 (emphasis added).)

> According to one preferred embodiment, the invention comprises a system which associates *on-line information* with geographic areas. The system comprises a computer network wherein a plurality of computers have access to the computer network and an organizer executing in the computer network.

(*Id.* at 2:63-66 (emphasis added).)

> Under another aspect, the invention comprises a system for composing the display format of remotely accessible information in an *on-line* network.

---

[7] This appears to have been intended as a reference to the "National Center for Supercomputing Applications."

(*Id.* at 3:31-33.)

> FIG. 1 is a simplified schematic block diagram which illustrates the general structure of an *on-line* computer service such as the Internet. As is well understood to those of skill in the art, the Internet comprises a plurality of geographically distributed servers, interconnected by a high-speed data backbone. For example, as illustrated in FIG. 1, a plurality of routing hubs 100 interconnect via a plurality of high-speed data transfer connections 105. In one advantageous embodiment, the routing hubs 100 comprise domain name system (DNS) servers, as is well known in the art. DNS is a transfer control protocol/Internet protocol (TCP/IP) service that is called upon to translate domain names to and from Internet protocol (IP) addresses. The routing hubs 100 connect to one or more of the other routing hubs 100 via high-speed data links such as T1 links, T3 links, ATM links, etc.

(*Id.* at 5:66-6:14.)

As to extrinsic evidence, Plaintiff's pre-briefing submission cited "Webster's II New College Dictionary (1995) at 765," which Plaintiff submitted includes a definition of "on-line" as "1 c. accessible by means of a computer network." (Dkt. No. 329, Ex. A, 10/11/2012 Plaintiff's Proposed Claim Constructions and Supporting Citations, at 4.)

The dispute in *Geomas* was not whether "on-line information" must be remotely accessible but rather was whether "on-line information" is "information that must be 'searched and then displayed,'" as the defendant in *Geomas* proposed. *Geomas* at 13-14. The *Geomas* decision rejected the defendant's proposal in that regard and construed "on-line information" to mean "information capable of being accessed by a computer."

In the context of the dispute in the present case, the consistent usage of "on-line" in the specification to refer to information accessible over a computer network, as quoted above, together with Plaintiff's own above-quoted extrinsic evidence supporting such a reading, leads the Court to a different conclusion than the more general construction reached in *Geomas*. *See Phillips*, 415 F.3d at 1313 ("[T]he person of ordinary skill in the art is deemed to read the claim

term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."); *see also Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1144-45 (Fed. Cir. 2005) (construing the term "board" to mean "wood cut from a log" in light of the patentee's consistent usage of the term; noting that the patentee "is not entitled to a claim construction divorced from the context of the written description and prosecution history").

The Court therefore substantially adopts Defendants' proposal but omits the word "remotely," which would be redundant of requiring that the information be accessible over a network. The Court accordingly hereby construes **"on-line information"** to mean **"information that is accessible over a computer network."**

## L. "organizer" (Claim 1)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "software, hardware, and/or firmware, that alone or in combination is configured to receive search requests, together with a database and a search engine in communication with the database" | "a network interface (comprising a database and a search engine) that organizes 'on-line information' into categorized listings to make finding information easier" |

(Dkt. No. 354, at 21; Dkt. No. 361, at 42.)

(1) The Parties' Positions

Plaintiff argues that no network interface is required because "Fig. 1 demonstrates a preferred embodiment that does not use a network browser interface." (Dkt. No. 354, at 22.)

Defendants respond that Plaintiff's proposal "simply repeats other claim language and improperly reduces the term 'organizer' to a 'thing' that somehow just receives search terms." (Dkt. No. 361, at 43.) Defendants further note that during prosecution, the Examiner found that a certain Yahoo prior art "directory" or "table of contents" was an "organizer." (*Id.*, at 44.)

Plaintiff replies by reiterating that "Defendants['] contention that the 'organizer' is a 'network interface' is rebutted by Fig. 1 that is a preferred embodiment which uses a port server or routing hub, not a network browser interface."  (Dkt. No. 365, at 10.)  Plaintiff also argues that Claim 1 does not require a network interface and does not limit what organizes the information.  (*Id.*)

(2)  Analysis

Claim 1 recites:

> 1.  A system which associates on-line information with geographic areas, said system comprising:
>> a computer network wherein a plurality of computers have access to said computer network; and
>> an *organizer* executing in said computer network, wherein said *organizer* is configured to receive search requests from any one of said plurality of computers, said *organizer* comprising:
>>> a database of information organized into a hierarchy of geographical areas wherein entries corresponding to each one of said hierarchy of geographical areas is further organized into topics; and
>>> a search engine in communication with said database, said search engine configured to search geographically and topically, said search engine further configured to [s]elect one of said hierarchy of geographical areas prior to selection of a topic so as to provide a geographical search area wherein within said hierarchy of geographical areas at least one of said entries associated with a b[roa]der geographical area is dynamically replicated into at least o[n]e narrower geographical area, said search engine further configure[d] to search said topics within said selected geographical search area.

The specification discloses:

> The present invention relates to network interfaces which act to *organize* information accessible on the network and, in particular, to an Internet browser interface which acts to *organize* information available on the Internet based upon geographical distribution.

('474 Patent at 1:6-10 (emphasis added).)

> [T]he *organization* of information accessible through current Internet browsers and *organizers* such as NETSCAPE or MOSAIC, may not be suitable for a

54

number of desirable applications.  In certain instances, a user may desire to access information predicated upon geographic areas as opposed to by subject matter or keyword searches.  In addition, present Internet *organizers* do not effectively integrate the topical and geographically based information in a consistent manner.

(*Id.* at 2:24-32 (emphasis added).)

As depicted in FIG. 1, an Internet service provider 108 connects to one of the routing hubs 100 via an Ethernet link 110.  The ethernet link 110 communicates with a port server 112, a web *organizer* server 114, an E-mail server 116, a news server 118, as well as other servers (not shown in FIG. 1), as called for by the particular application.  The port server 112 communicates with a plurality of modems 120 wherein one or more of the modems 120 communicates with a stand-alone PC 130 via a modem 127 and a modem link 125.

* * *

When a user desires to access information available on the Internet, the user initiates a connection with the Internet from his PC (e.g., the stand-alone PC 130 or the LAN PCs 140, 141, 142).  For instance, in the case of the stand-alone PC 130, the user instructs the modem 127 to establish communication with the port server 112 via the modem link 125 and the receiving modem 120.  The port server 112 directs the communication between the stand-alone PC 130 and the routing hub 100.  In addition, the port server 112 allows the user to access E-mail services, news services, and the web *organizer* of the preferred embodiment via the ethernet link 110.

(*Id.* at 6:22-31 & 6:46-57 (emphasis added).)

In accordance with the teachings of the preferred embodiment, the web *organizer* server 114, together with other like servers in communication with the ethernet link 110 (i.e., in communication with the Internet access provider), provides subscribing users with a geographically *organized* perspective of the information available by accessing the Internet.

(*Id.* at 7:5-11 (emphasis added).)

*Geomas* found that "Claim 1, for example, requires that the 'organizer' is 'executing in said computer network.'  This language does not require a network browser interface."  *Geomas* at 25.  *Geomas* used the terms "network browser interface," "network browser," and "network interface" interchangeably.  *See id.* at 25-26.  *Geomas* also relied upon Figure 1, which does not

depict a network browser interface but does depict a connection path through a "port server 112" and an alternative connection path through a "routing hub 100." *Id.* at 26. Figure 1 is reproduced here:



FIG. 1

Setting aside whether the "port server" and "routing hub" of Figure 1 are alternatives to a network interface or are simply hardware that would be used in conjunction with a network interface, Claim 1 does not recite a network interface. Also, the specification does not limit the seemingly generic term "organizer" so as to require a network interface. Further, the prosecution history cited by Defendants contains no "definitive statements" that would place any limitation on the disputed term. *Omega Eng. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003) ("As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice

function of the intrinsic evidence and protects the public's reliance on *definitive* statements made during prosecution.") (emphasis added).

Finally, although statements by a patent examiner can be evidence of the understanding of a person of ordinary skill in the art (*Salazar*, 414 F.3d at 1347), the Examiner's citation of "directory" prior art as corresponding to the "organizer" limitation does not warrant imposing Defendants' proposed limitation that an "organizer" must "organize[] 'on-line information' into categorized listings."

Thus, having considered the briefing in the present case, the Court reaches substantially the same conclusion reached in *Geomas* and hereby construes **"organizer"** to mean **"device or application configured to receive search requests, together with a database and a search engine in communication with the database."**

**M. "topic" (Claims 1, 18, 20, 24, 31, 34, 36, 37 & 38)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No need to construe. Plain and ordinary meaning. | "an independent, searchable category of related goods or services, as distinguished from geographic information and the entries or data records associated with that category" |

(Dkt. No. 354, at 25; Dkt. No. 361, at 7.)

(1) The Parties' Positions

Plaintiff argues that "'topic' has a well-understood plain and ordinary meaning and does not have any special meaning in the art or as disclosed in the '474 patent." (Dkt. No. 354, at 25.) Plaintiff also notes that no party in *Geomas* proposed a construction for "topic." (*Id.*) Plaintiff urges that Defendants' proposal to limit the term to "goods and services" is incorrect because "[t]he specification . . . broadly uses the term 'topic,' without limitation to 'goods and services'

by using such terms as jobs, calendar, city government, historic sites, entertainment, sports teams, opinions and editorials." (*Id.*, at 26 (citing '474 Patent at 5:6-8, 5:60-65, 9:17-19 & Fig. 10).) Plaintiff further responds that the claims "explain[] that entries and data records may be associated with a topic and a geographical area." (*Id.*, at 26.)

Defendants respond that Plaintiff "erroneously conflates 'topics' with other concepts and terms contained in the claims—namely, geographical information and the information contained in each entry or data record (e.g., phone number or address) that is associated with a store or point of interest." (Dkt. No. 361, at 7.) In Figure 18, for example, Defendants note that "the geographic information ('Los Angeles'), the topical information ('Hospitals & Health Services'), and the final information contained in each entry (e.g., the address and phone number for Children's Hospital) are distinct from one another." (*Id.*, at 9.)

As to the proper construction for "topic," Defendants argue that "[b]y being a category, a 'topic' therefore must retain a categorical level of generality" and "therefore cannot be something as specific as a particular job, a particular play, a particular elementary school, or a particular hardware store." (*Id.*, at 10.) "In other words, 'topic' is an abstract term that categorizes the data contained within it and, therefore, is not the same as the constituent entries and data records." (*Id.*) As to Plaintiff's proposal of "plain and ordinary meaning," Defendants respond that Plaintiff "cites no evidence that 'topics' even has a plain and ordinary meaning to one of ordinary skill in the art, or what that meaning would be." (*Id.*, at 12.)

Plaintiff replies that "[w]ith the prevalence of search engines such as Google, Yahoo!, and Bing, in which users readily understand the 'topic' of their search, there is no need to define 'topic.'" (Dkt. No. 365, at 11-12.) Plaintiff also notes that "phone numbers are not geographical and can be topics," and "the claims do not require separate 'topical information' and

58

'geographical information.'" (*Id.*, at 12 & 13.) Plaintiff also argues that because "there may be so many topics such that each topic may contain only one entry," "Defendants' contention that 'topic' must be a 'category' that must 'retain a categorical level of generality' and cannot be something 'particular' is not supported by the claim language or specification." (*Id.*, at 13.) Plaintiff further urges that because certain dependent claims require that "topics are hierarchically organized," "a topic is not required to be independent and can depend from other topics." (*Id.*, at 13-14.) Finally, Plaintiff submits that *Geomas* rejected the argument that the database must be first organized geographically and then organized topically. (*Id.*, at 14.)

At the February 12, 2013 hearing, Defendants urged that construing "topic" to have its plain meaning would be a "Trojan Horse" by which Plaintiff could later identify telephone numbers and street addresses as satisfying the "topic" limitations. Defendants reiterated that a "topic" cannot be a particular entity or a detail about a particular entity, such as a phone number, but instead must be a category.

(2) Analysis

The parties in *Geomas* did not propose "topic" as a separate term for construction, so the Court did not construe "topic" in *Geomas*.

The Summary of the Invention states that topical information is associated with geographical areas:

> A user interface organizes information into a consistent presentation of menu selections and geographically organized information. Furthermore, at specified levels of the geographically organized information, the user is presented with the option of accessing topically organized information from among several topic selections, wherein *the topical information is defined by the fact that the topical information is associated with a particular geographical area*. Thus, a system and method for integrating geographically organized information with topical information is provided by the teachings of the present invention.

59

('474 Patent at 2:40-52 (emphasis added).) The specification reiterates that topics can be associated with geographical areas, but the description uses the term "topic" generically and does not imbue "topic" with any special meaning.

> [A]t specified levels of the geographically organized information, the user is presented with the option of accessing *topically organized information* from among several topic selections, wherein *the topical information is customized for each geographic area to reflect topics indigenous to that area.* Thus, each of the lists is primarily related by association with physical attributes within a particular geographic area. That is, although the topic selections associated with a particular geographical area may be related by chance (e.g., a particular chain of restaurants may be owned by the same company as another chain of bakeries) *the essential reason for grouping the topics together is that they are associated with the same geographic area.* Thus, such a system is distinguished from systems which have geographically differentiated listings for the same topic (such as job search databases which include information about jobs in different cities), since these listings are primarily related to the topic (e.g., jobs), not to the geographical area.

(*Id.* at 5:47-65 (emphasis added).)

> As will be discussed below, the *topic list presented to the user includes a list of topics such as business services, entertainment, news, consumer goods, historic sites, etc.* Each topic within the topic list may also include a subtopic list. For example, under the topic "schools," the subtopics of elementary, high school, and colleges and universities may be included.

(*Id.* at 9:28-34 (emphasis added).)

> In addition, *if a given topic or subtopic includes final destinations (i.e., subjects about which information such as telephone numbers, addresses, etc., is available)*, such information may be presented for viewing by the user by accessing the yellow pages database 245, as described below. Once the HTML document has been generated, this document is sent to the user via the Netscape server and the Internet link 305, as represented within an activity block 330. A sample local content HTML document is included in Table 3. Finally, the HTML document is displayed on the user's terminal via the Netscape browser interface, as represented within an activity block 335.

(*Id.* at 15:41-52 (emphasis added).)

> As to the figures:

FIG. 6 is a system flow diagram that illustrates the general method used in accordance with the preferred embodiment to process a yellow page query initiated by the user. That is, when the user wishes to access *information about individual goods, services, or other topics, (i.e., final destinations)*, the user points to and clicks over the given topic or subtopic in order to view the individual information pertaining to that topic or subtopic. This transfer to the yellow page query is defined as a final destination in the local content HTML document 335.

(*Id.* at 15:54-63 (emphasis added).)

Further, "FIG. 10 is an exemplary display which illustrates the local content list presented to the user when the user accesses a list of topics within the selected geographic area." (*Id.* at 5:6-8 (emphasis added).) Figure 10 includes a heading of "City of Los Angeles, Ca.," underneath which appear 27 items, listed alphabetically, that appear to be hyperlinked and that include, for example, "Amusement Parks," "Calendar," "Chamber of Commerce," "Hotels & Motels," "Museums," "School Listing," and "Transportation."

In light of the above-quoted varied, generic uses of "topic," Defendants' proposal to limit the term to "goods or services" should be rejected. Defendants' proposal of "independent" similarly lacks support in the specification, and nothing precludes a "topic" from consisting of a single entity. Further, Defendants' proposal of "searchable" is unnecessary and is redundant of the claim limitations that relate to searching. Finally, Defendants' proposal of "as distinguished from geographic information and the entries or data records associated with that category" would tend to confuse rather than clarify and would risk importing limitations from the preferred embodiment. Instead, "topic" is a well-understood term that is used generically throughout the patent and requires no special construction. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in

redundancy."); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351,

1362 (Fed. Cir. 2008) ("[D]istrict courts are not (and should not be) required to construe every

limitation present in a patent's asserted claims.").

The Court therefore hereby construes **"topic"** to have its **plain meaning**.

**N. "entries corresponding to each one of said hierarchy of geographical areas is further organized into topics" (Claim 1), "entries corresponding to each of said hierarchy of geographical area is further organized into topics" (Claim 20), and "organizing said entries corresponding to said plurality of geographical areas into one or more topics" (Claim 31)**

| "entries corresponding to each one of said hierarchy of geographical areas is further organized into topics" (Claim 1)  "entries corresponding to each of said hierarchy of geographical area is further organized into topics" (Claim 20) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| "data in the database associated with a geographic area in the hierarchy of geographical areas is further organized to permit selected data to be retrieved into topics" | "after the database is geographically ordered, further ordering the database entries for each particular geographic area into topics that are associated with that particular geographic area (as distinguished from geographically differentiated listings for the same topic)" |
| **"organizing said entries corresponding to said plurality of geographical areas into one or more topics" (Claim 31)** | |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| "organizing data contained in the database corresponding to one or more geographical areas to further permit selected data to be retrieved into one or more topics" | Same as for related terms in Claims 1 and 20. |

(Dkt. No. 354, at 15.)

(1)  The Parties' Positions

Plaintiff submits that its proposals are the constructions that the Court adopted in *Geomas*.  (Dkt. No. 354, at 15.)  Plaintiff argues that as found in *Geomas*, "it is the entries and not the topics that correspond to the hierarchy of geographical areas."  (*Id.*)  Plaintiff urges that "Defendants' proposed construction again seeks to erroneously require a tree-like structure[] in which the database is first ordered geographically and then the entries for 'each particular geographic area' are ordered into topics associated with 'that particular geographic area.'"  (*Id.*, at 16.)

Defendants argue these terms together with the constituent term "topic," discussed above. Defendants argue that as also disclosed in the specification, "the claims require that geographic organization takes place before topical organization."  (Dkt. No. 361, at 13.)  Defendants urge that Plaintiff's proposal "improperly changes the required active ordering of entries (*i.e.*, the organization into topics) into a vague and passive 'permission to retrieve' data."  (*Id.*, at 14.)

In reply, Plaintiff reiterates that *Geomas* rejected Defendants' argument that the database is first organized geographically and then organized topically.  (Dkt. No. 365, at 14.)  Plaintiff submits:

> Claim 1, dependent claims, and the specification repeatedly use the term "further" in a manner that does not denote order and is more akin to additional or also. (*e.g.*, Ex. A at 38:50-51; 3:6-8 ("The organizer *further* comprises a search engine in communication with the database."); 3:25 [(]"According to yet a *further* preferred embodiment . . ."[)]; 3:35-36; 4:24; 9:55-56; 40:31-32 ("said database of information *further* contains a plurality of display formats"); 40:35-36 ("The system of claim 28 *further* comprising a display page . . .")).

(*Id.*)

At the February 12, 2013 hearing, Defendants urged that as a matter of logic and grammar, the claims recite that data or entries already corresponding to a geographical area are

63

then further organized into topics.  *Altiris Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369-70 (Fed. Cir. 2003) ("[W]e look to the claim language to determine if, as a matter of logic or grammar, they must be performed in the order written.").

(2)  Analysis

The *Geomas* decision relied primarily on the plain language of the claims, such as Claim 1, which recites in relevant part (emphasis added): "a database of information organized into a hierarchy of geographical areas wherein *entries corresponding to each one of said hierarchy of geographical areas is* [*sic*, are] *further organized into topics . . . .*"  *Geomas* noted that "[t]here is no indication in the patent that the geographic area necessarily must be selected before the topic."  *Geomas* at 21.

Having considered the briefing and oral arguments of counsel in the present case, the Court reaches substantially the same conclusion that the Court reached in *Geomas* except that the constituent term "entries" is construed separately above and need not be construed again here. The Court therefore hereby construes the disputed terms as set forth in the following chart:

| Term | Construction |
|---|---|
| **"entries corresponding to each one of said hierarchy of geographical areas is further organized into topics"**<br><br>**"entries corresponding to each of said hierarchy of geographical area is further organized into topics"** | **"entries associated with a geographical area in the hierarchy of geographical areas are further organized to permit selected data to be retrieved according to topics"** |
| **"organizing said entries corresponding to said plurality of geographical areas into one or more topics"** | **"organizing said entries corresponding to one or more geographical areas to further permit selected data to be retrieved according to one or more topics"** |

**O. "narrower geographical area" (Claim 1), "geographical area of relatively smaller expanse" (Claim 20), "broader geographical area" (Claims 1 & 31), and "geographical area of relatively larger expanse" (Claim 20)**

| "narrower geographical area" (Claim 1)<br><br>"geographical area of relatively smaller expanse" (Claim 20) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| "No need to construe. Plain and ordinary meaning." | "a geographic area within the database encompassed by a broader geographic area within the database" |
| "broader geographical area" (Claims 1 & 31)<br><br>"geographical area of relatively larger expanse" (Claim 20) | |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| "No need to construe. Plain and ordinary meaning." | "a geographic area within the database that encompasses one or more narrower geographic areas within the database" |

(Dkt. No. 354, at 27; Dkt. No. 361, at 31.)

<u>(1) The Parties' Positions</u>

Plaintiff argues that "these terms have a well-understood plain and ordinary meaning and do not have any special meaning in the art or as disclosed in the '474 patent." (Dkt. No. 354, at 27.) Plaintiff also notes that no party in *Geomas* proposed a construction for these terms. (*Id.*) As to Defendants' proposals, Plaintiff argues that "Claim 1 is clear that 'a broader geographical area' and 'one narrower geographical area' are distinct from the 'hierarchy of geographical areas' for the entries." (*Id.*, at 28.) Plaintiff also argues that "an entry can be associated with one or more geographical areas." (*Id.*, at 29.) Finally, Plaintiff argues that "the patent does not limit

the structure of the database and do[es] not require that broader areas encompass narrower areas within the database." (*Id.*)

Defendants respond that "the claim language and the specification require that broader geographic areas encompass narrow[er] geographic areas in the database." (Dkt. No. 361, at 31.) "Defendants incorporate their analysis of the geographical hierarchy and dynamic replication terms." (*Id.*)

Plaintiff replies that "these terms are sufficiently clear" and that claim differentiation refutes Defendants' proposed "encompassing" language. (Dkt. No. 365, at 15.)

(2) Analysis

Defendants' proposal that a narrower area must be "encompassed" by a broader area could be read to mean that the narrower area must be entirely within the broader area. Such an arrangement appears in the preferred embodiment, such as where a city is encompassed within a region, where a region is encompassed within a state, and where a state is encompassed within a country.

A person of ordinary skill in the art, however, might consider that a "region," for example, could cover multiple states, and perhaps less than the entirety of any of those states. To use an example relating to this Court's district, the Texarkana Division has its courthouse in the City of Texarkana, Texas. The federal courthouse straddles the state line between the State of Texas and the State of Arkansas, with approximately half of the building located in Texas and the other half located in Arkansas. Likewise, the Texarkana metropolitan region includes a portion of Texas and a portion of Arkansas. The Texarkana metropolitan region is, of course, far smaller than either Texas or Arkansas. But even though the Texarkana metropolitan region is of much smaller expanse than the State of Texas, for example, the State of Texas does not

encompass the Texarkana metropolitan region.  For example, the Arkansas side of the federal courthouse in Texarkana is certainly within the Texarkana metropolitan region, but that portion of the courthouse is located in Arkansas and is therefore outside of the State of Texas.  This example illustrates why the disputed terms should not be limited to the preferred embodiments in which broader areas must encompass narrower areas.

As discussed in the present case and in *Geomas*, the hierarchy terms do not limit the claims to require, as Defendants propose, "that broader geographic areas encompass narrow[er] geographic areas in the database, and vice versa."  (Dkt. No. 361, at 31.)  Defendants have identified no other basis upon which to add an "encompassed" limitation to the disputed terms.

Finally, Plaintiff's argument that "'a broader geographical area' and 'one narrower geographical area' are distinct from the 'hierarchy of geographical areas' for the entries" is expressly rejected as contrary to the plain language of the claim.  For example, Claim 1 recites in relevant part (emphasis added): "*within said hierarchy of geographical areas* at least one of said entries associated with a b[roa]der geographical area is dynamically replicated into at least o[n]e narrower geographical area."

The Court therefore hereby construes the terms **"narrower geographical area," "geographical area of relatively smaller expanse," "broader geographical area,"** and **"geographical area of relatively larger expanse"** to have their **plain meaning**.  Defendants' proposal that broader or larger geographical areas must encompass narrower or smaller geographical areas is hereby expressly rejected.  Plaintiff's proposal that the disputed terms are distinct from the recited "hierarchy of geographical areas" is also hereby expressly rejected.

## IV. CONCLUSION

The Court adopts the constructions set forth in this opinion for the disputed terms of the patents-in-suit. The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**So ORDERED and SIGNED this 25th day of February, 2013.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE