# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**FRONTIER COMMUNICATIONS CORPORATION,** *et al.***,**<br><br>    **Defendants.** | **Case No. 2:10-cv-00265-JRG**<br><br>**CONSOLIDATED CASE** |

### PLAINTIFF GEOTAG INC.'S NOTICE OF REQUEST FOR
### STATUS CONFERENCE ON MEDIATION ISSUES ON TUESDAY, APRIL 2

Plaintiff GeoTag Inc. ("GeoTag"), hereby files this Notice of Request for Status Conference on Mediation Issues[1] on Tuesday, April 2.[2] In connection with this Notice, GeoTag reports to the Court as follows:

On February 28, 2013, the Court issued its Order on Mediation and Appointing Mediators, requiring all parties in this consolidated case to mediate within 60 days of the Mediation Order, appointing 15 mediators, and assigning certain defendants to each mediator. (Dkt. No. 494, the "Mediation Order")  Since that time, the mediators, GeoTag and the defendants have worked to schedule all of the mediations within the required time frame. *See*

---

[1] In the interests of time, this request for status conference is being made in connection with a Notice rather than by filing a formal Motion.  GeoTag has discussed all of the matters in this Notice with various mediators and defendants over the course of the past few days, and the general reaction has been that further clarity would be useful.  GeoTag does not mean to suggest that it has formally met and conferred with every defendant on every issue listed in this Notice; however, GeoTag strongly believes that the interests of time with respect to the ongoing mediation process far outweigh any benefit that would be gained by a formal meet-and-confer process, which would undoubtedly take days and perhaps weeks to complete.

[2] Tuesday, April 2 is the only weekday in the entire month of April on which no mediations are currently scheduled.  *See* Master Mediation Calendar attached as Exhibit A.

Master Mediation Calendar, attached as Exhibit A hereto. All but a few defendants have been scheduled.

Over the past two weeks, GeoTag has mediated with about 33 defendant parties and several indemnitors, involving 6 different mediators (Judge Ward, Judge Faulkner, Jim Knowles, Kip Glasscock, Jim Blume and Guy Harrison). With the exception of one day where there were only three defendants mediating, the mediation sessions have occurred at a single location on each day. The defendants generally requested that the common mediation facility be near DFW Airport, so mediations have been booked at the Marriott DFW North and the Gaylord Texan hotels.

After consultation with the mediators and counsel for many of the defendants, GeoTag believes that a status conference with the Court would be helpful to inform the Court and obtain guidance on certain issues have arisen during the course of the initial mediations and in the scheduling and coordination process, including without limitation:

A.    **Obstacles to Successful Mediation**

1.    **Indemnity Issues**

The indemnity issues that have complicated and challenged the mediations come in a wide variety of flavors. The questions for any given defendant may include:

- Is there a third-party provider of the defendant's store locator, product locator, mobile locator and/or job locator?

- What is the extent of the third-party provider's service? (For example: Does the locator completely re-direct to the third-party provider's website? Or does the third-party provider provide only the locator functionality? Or does the third-party provider simply provide a map? Or is there some other arrangement?)

- What are the dates that the third party provided the service?

- What are the details with respect to the scope of the indemnity obligation?

- What dollar limitations or other limitations are there on the indemnity?

- What is the time period covered by the indemnitor?

- What is the indemnitor's financial ability to pay on behalf of any one defendant or on behalf of multiple defendants who may be subject to judgments?

Obstacles to mediation and settlement presented by these indemnity issues include, without limitation:

- Certain defendants have indemnities that cover only certain time periods or only certain functionality, but they are either unable (because of the indemnitor's demands) or unwilling to make any settlement offers with respect to time periods or functionality not covered by the indemnity.

- Indemnitors generally are not willing to discuss settlement on an individual defendant basis, but rather are only willing to discuss settlement on a global basis, under which the indemnitor demands a license and release for additional customers, products or services beyond what is at issue in the lawsuits.

Some of these issues have been addressed by the indemnitor engaging in the mediation process. For instance, with respect to job locators, GeoTag has reached a settlement in principle through the mediation process with one job locator provider, has engaged in substantial negotiations with another, and has scheduled a mediation session for April 4 with a third. On the other hand, indemnity issues have brought the mediations to an absolute halt with respect to some defendants. For instance, a certain store locator provider/indemnitor apparently has refused to allow its customer defendants to make any offers at all, even though it only covers store locators and even if the indemnity only covers part of the time period at issue.

With respect to indemnity issues, GeoTag suggests that, at a minimum, (a) each defendant be required to provide all information related to third-party providers and indemnity coverage (as described in the questions above) to the mediator and GeoTag within a reasonable time in advance of the mediation; and (b) all indemnitors or potential indemnitors be expressly made subject to the Mediation Order and required to participate in the mediation process.

### 2. Lack of Document Production and Other Information on Damages

GeoTag has heard from mediators that defendants complain about issues related to the damages model that GeoTag has discussed as well as GeoTag's current estimates of the amount of damages that it will seek at trial.

From GeoTag's perspective, it has done the best it can do at this point with publicly available information and the very limited financial information that has been provided by defendants at this point (for many defendants, only 10-K reports), and the problem is mostly one of defendants' foot-dragging on discovery. For instance, GeoTag served interrogatories that included requests for damages information that were due in mid-January, but most defendants gave only stock objections and no meaningful answers. GeoTag has been diligently working through individual meet-and-confer calls, but the process is laborious. GeoTag had requested production of damages information in accordance with the defendants' obligations under the Discovery Order and Local Rules for many months, and more specifically, on February 22, GeoTag sent a letter to all defendants identifying 18 specific categories of damages-related information that should be produced to permit meaningful mediations. *See* Exhibit B. This letter was also provided to all of the mediators in GeoTag's initial communication with them on March 1, the day after the Mediation Order was entered. Virtually all defendants have ignored this letter and have produced no additional information.[3]

To address these damages issues, GeoTag is prepared to file a Motion to Clarify the Scope of Damages-Related Discovery and Compel, which would apply to all defendants in the case and be heard by the Court on an expedited basis as soon as the Court can accommodate it.

---

[3] GeoTag has held meet-and-confer calls with several individual defendants, who have generally agreed to produce some but far from all of the requested documents.

**B.   Mediation Fees and Costs**

**1.   "Per party" vs "Per side" allocation of mediator fees and expenses**

In short, GeoTag's position is that mediator fees and expenses should be allocated on a "per party" basis, in accordance Appendix H, Section V of the Local Rules ("Absent agreement of the parties to the contrary, the cost for the mediator's services shall be borne equally by the parties to the mediation."), and the Court expressly adopted Appendix H in the Mediation Order. Defendants assert that mediator fees and expenses should be borne on a "per side" basis, with GeoTag being assessed 50% of the mediator fees and expenses and defendants sharing the other 50%. The practice of the mediators has been split – some have done it each way.

Guidance from the Court on this issue would be helpful.

**2.   Allocation of costs incurred by GeoTag as a result of coordination**

At the request of the mediators and defendants, GeoTag has coordinated the mediations, including obtaining suitable space at hotels near DFW Airport and entering into contracts for rooms and catering. Hopefully GeoTag's good deed in this respect will not be punished. GeoTag requests clarity that these are costs of mediation to be allocated to the defendants on a "per party" basis, including without limitation all amounts that the hotels have charged because of required minimum room commitments or other financial commitments.

**C.   Mediation Procedures**

**1.   Necessity of breakout rooms for defendants**

During the first full week of mediations, all mediating defendants other than one booked individual breakout rooms in the hotel. During the second full week, however, many (and perhaps most) defendants did not book individual breakout rooms. This causes at least three distinct concerns. The first concern is a practical and financial one. The hotels required a

minimum commitment of rooms to enter into the contracts for the mediation space, which means a minimum financial commitment as well. Accordingly, the room costs are costs that could not be avoided and therefore should be shared.[4] Second, mediation discussions are supposed to be entirely confidential, and discussions occurring in the hallway of a hotel raise serious confidentiality concerns. And third, the fact that a defendant would not spend a modest amount of money to reserve a breakout room casts doubt on such a defendant's commitment to the mediation process and the level of focus and engagement being applied by its representatives.

GeoTag requests that each mediating defendant be required to reserve an individual breakout room for their day of mediation, or alternatively, that it be made clear that defendants are required to share in the complete costs of the common mediation facility regardless of whether they reserved an individual breakout room.

**2.     Maximum number of defendants to mediate on any given day**

GeoTag is present at the mediation sessions each day with both of its appropriate corporate representatives and multiple outside counsel, and has accommodated scheduling concerns by agreeing to mediate on two Saturdays in April. In order to prevent any one mediation day from being overcrowded and to allow the best chance for success, GeoTag believes that 10-12 defendants per day should be the maximum number of defendants allowed to sign up for any one mediation day.

GeoTag suggests that the Court require all remaining unscheduled defendants to schedule into mediation days that have less than 12 defendants.

---

[4] For instance, looking into the week of April 1-5, in order to secure the space at the Gaylord Texan, GeoTag had to contract for 127 rooms (including mediation rooms and sleeping rooms). The threshold to avoid penalties is 102 rooms, and as of last night only 41 rooms are booked.

### 3. Necessity of defendant corporate reps and counsel to plan for attending a full day of mediation

Over the first two weeks of mediation, there have been a number of instances where defendant corporate representatives have shown up to the mediation with their bags packed and in some instances with early afternoon flights booked, as early as 1:00 p.m. On one occasion a defendant's corporate representative did not arrive until after noon even though the session started early in the morning. These situations are not conducive to productive mediation.

GeoTag suggests that the Court expressly require all parties to plan for attending a full day of mediation.[5]

WHEREFORE, GeoTag respectfully requests that the Court set a Status Conference on Mediation Issues to address these issues and any others that may concern the Court, on Tuesday, April 2, 2013, or on another date at the Court's earliest convenience.

Dated: March 28, 2013                    Respectfully submitted,

                                         /s/ Craig Tadlock
                                     By: Craig Tadlock
                                         Texas State Bar No. 00791766
                                         Keith Smiley
                                         Texas State Bar No. 24067869
                                         Tadlock Law Firm
                                         2701 Dallas Parkway, Suite 360
                                         Plano, Texas 75093
                                         Telephone: (903) 730-6789
                                         e-mail: craig@tadlocklawfirm.com
                                                 keith@tadlocklawfirm.com

---

[5] There are some situations where the mediator suggested that the defendants' start times be staggered, with some beginning in the morning and some beginning early afternoon, and GeoTag agreed to this in light of the commitment by the mediator and the affected defendants that they would continue into the evening if needed. GeoTag is not trying to undo its agreement on this point, although it does want to be clear that each defendant starting in the afternoon needs to plan to stay into the evening if needed to have a full and complete mediation session.

        David R. Bennett
        Direction IP Law
        P.O. Box 14184
        Chicago, IL 60614-0184
        Telephone: (312) 291-1667
        e-mail:  dbennett@directionip.com

        Daniel Mount
        Kevin Pasquinelli
        Mount Spelman & Fingerman, PC
        333 West San Carlos Street
        Riverpark Tower, Suite 1650
        San Jose, CA 95110
        Telephone: (408) 279-7000
        e-mail: dan@mount.com
                kpasquinelli@mount.com

        ***Attorneys for Plaintiff GeoTag, Inc.***

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 28, 2013, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

        */s/ Craig Tadlock*
        Craig Tadlock