# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| GEOTAG INC., <br><br> Plaintiff, <br><br> v. <br><br> FRONTIER COMMUNICATIONS CORPORATION, *et al.*, <br><br> Defendants. | 2:10-cv-00265-JRG <br><br> (Consolidated) |

**PLAINTIFF GEOTAG, INC.'S RESPONSE TO CERTAIN DEFENDANTS'
SUPPLEMENTAL BRIEFING ON DEFENDANTS' MOTION TO
STRIKE INSUFFICIENT INFRINGEMENT CONTENTIONS**

Plaintiff GeoTag, Inc. ("GeoTag") files this response to Certain Defendants' Supplemental Briefing on Defendants' Motion to Strike Insufficient Infringement Contentions.

INTRODUCTION

Defendants' motion is premature because they refused to disclose during the meet and confer which infringement contention was going to be addressed in their supplemental briefing. Defendants' position was that all infringement contentions had the same deficiencies and any compromise or remedy was pointless because it was too late. Interestingly, Defendants' supplemental briefing does not address the contentions of any defendants discussed in their original briefing.[1] Instead, Defendants' allegation of deficient contentions is now focused on the mobile locator for a single defendant, Local.com (with a passing reference to Match.com and Luxottica).

Defendants' brief actually supports that GeoTag's infringement contentions properly comply with the rules. First, Defendants' complaint that GeoTag's infringement contentions merely mimic the claim language is rebutted by their own complaint regarding GeoTag's citations to source code. GeoTag's contentions are therefore unique for each defendant because they cite to each Defendants' source code. Therefore, GeoTag's contentions are not mimicry.

Second, Defendants' complaint that GeoTag's citation to source code is insufficiently broad is rebutted by their complaint that GeoTag's specific citations to code are too narrow. In most instances GeoTag's infringement contentions disclose a very complete list of pin point source code cites for each element. These pinpoint citations usually fall within a single broader range of code and therefore that range is also cited. Together these disclose GeoTag's theory of infringement for how each element is met either literally or under the doctrine of equivalents.

---

[1] Defendants' original motion to strike discussed Doctor's Associates d/b/a Subway, ASICS America Corp., Brown Jordan International Inc., Caterpillar Inc., and People Media Inc.

1

Third, Defendants' complaint that GeoTag's narrower citations to source code are too narrow is again contradicted by their contention that GeoTag also cited a larger section of code. GeoTag provided a citation to the complete functionality to put the code in context and provided additional specific examples within the broader code.

Fourth, Defendants throw a hodge-podge of complaints directed to GeoTag's citation of third party source code from Mapquest, Microsoft, and Google. These third parties are represented by law firms that are part of the JDG so Defendants' complaint that they did not have access to the source code or do not understand the allegations merely demonstrates Defendants' refusal to take any affirmative action to investigate the allegations of infringement.

## I. STATEMENT OF FACTS

As explained in GeoTag's original responsive briefing on this issue (D.I. 358), in compliance with P.R. 3-1, based on publicly available information, GeoTag served approximately 800 claim charts describing GeoTag's infringement contentions of each specific accused instrumentality on November 22, 2011, and June 27, 2012.

On February 27, 2013, the Court entered the Docket Control Order and Second Amended Discovery Order, setting June 17, 2013, as the date by which GeoTag must supplement its infringement contentions based on review of the source code. (D.I. 479 at ¶3(a); D.I. 481 at 3). In compliance with the Court's Order, GeoTag served its infringement contentions on Local.com (and the other defendants). Defendants' contention that GeoTag was required to file leave to supplement its infringement contentions is inconsistent with the Court's order and addressed by GeoTag in response to Defendants' First Motion to Enforce Local Patent Rule 3-6 by Striking Plaintiff's Supplemental Infringement Contentions Regarding the Doctrine of Equivalents and Newly Accused Instrumentalities. (D.I. 813).

GeoTag's infringement contention for Mobile Local.com contains three columns. The first column quotes the language of the claims, which is broken down into different elements. For example, claim 1 is broken down into at least nine different parts. The second column explains that that accused instrumentality meets the limitation and further provides an example of how the accused instrumentality satisfies the limitation. The third column cites to source code supporting how the accused instrumentality satisfies each element of each limitation. Further descriptions of GeoTag's infringement contentions will be addressed in the Argument.

## II. ARGUMENT AND FURTHER FACTUAL DISCLOSURES

Defendants make four arguments seeking to strike GeoTag's infringement contentions. First, Defendants contend that GeoTag's infringement contentions "merely mimic the claim language" despite numerous citations to source code and descriptions that do not use the claim language. Second, Defendants contend that GeoTag's citations to the source code are not sufficient because the broader citation is not specific enough and the narrow citations are too specific. Third, Defendants argue that the doctrine of equivalents arguments lack specificity despite an element by element analysis and citations to source code. Fourth, Defendants argue that GeoTag's citations to third party source code lack specificity even through GeoTag served narrowed infringement contentions that address this issue. As explained further below, Defendants' arguments have no merits and their motion to strike should be denied.

### A. GeoTag's Contentions Do Not Merely Mimic the Claim Language

Defendants argue that GeoTag's infringement contentions merely mimic the claim language by limiting their discussion to only the first paragraph of a multi-paragraph analysis in the second column and entirely ignoring the third column of the chart that cites to source code. This is readily apparent by looking at the infringement contentions. Defendants' brief focuses on Claim 20(a) of Mobile Local.com and GeoTag will address that limitation here.

GeoTag appropriate starts its infringement analysis by reiterating the claim language before it goes into further analysis that does not mimic the claim language. The second column of the claim chart for Claim 20(a) for Mobile Local.com states in relevant part:

> For example, among other things, the database of the Accused Instrumentality is organized into a predetermined hierarchy of geographical areas and/or the device or application organizes data into a database that is organized into a predetermined hierarchy of geographical areas, such as state, city, zip code, and/or latitude/longitude.
>
> For example, among other things, the Accused Instrumentality includes a database that is exemplified in the entities referenced in the column to the right and comprises, alone or in combination, (a) SQL data repositories containing geolocation and store details; (b) XML data repositories containing geolocation and store details; (c) tables, structures, and things containing geolocation and store details.

(D.I. 821 at Ex. A at 9). GeoTag also provides a third column with citation to source code for, among other elements, the elements "hierarchy of geographical areas" and "database," as required by the limitation. This disclosure unequivocally does not "merely mimic the claim language." It specifically discloses SQL repositories, XML repositories and certain tables, as cited to in the source code. These references are specific to each Defendant.

Defendants contend that the examples are not specific because they use "and/or" and "among other things." These terms are not vague because they demonstrate the full scope of accusation of infringement. For example, the limitation of "predetermined hierarchy of geographical areas" can be met by (1) state and city; (2) state, city, zip; (3) zip code and latitude/longitude; (4) latitude/longitude, etc. The "and/or" and "among other things" is necessary to convey that the combinations satisfy the limitations. The contentions do not leave "Local to guess which of the two possibilities" are being accused because the contentions convey to Local exactly what is being accused of infringement.

Defendants' contention that the Local.com contentions are "identical" across all accused instrumentalities in this case is not supported by Defendants' brief that provides no support for

that statement.  Because all of the locators are similar in functionality, the references are also similar, but not identical.  The analysis is particular to each defendant as demonstrated by the differences between Match.com and Mobile Local.com.  Match.com cites "state, city, zip code, *street,* and/or latitude/longitude" whereas Mobile Local.com does not include "street."  Match.com includes "(b) Windows Services" whereas Mobile Local.com includes "(b) XML data repositories…." (*Compare* D.I. 821 at Ex. B at 9 *with* Ex. A at 9).  GeoTag analyzed each system separately, tailored each infringement contention to the particular accused instrumentality and technology, and cited to the specific source code for each accused instrumentality.  Almost all locators utilize state, city, and zip code, so quite naturally these references will be similar.  Defendants have not argued that any of these references are inaccurate.  Notwithstanding those similarities, the source code references are completely unique for each Defendant.  For example, the Mobile Local.com infringement contentions cite to Mobile Local.com source code, the Match.com infringement contentions cite to Match.com source code, and the Luxotica infringement contentions cite to Luxotica source code.  (D.I. 821 at Exs. A, B, D).  The infringement contentions are therefore not identical and are entirely specific to each Defendant.

Furthermore, as explained below, GeoTag provided specific citations to source code, which cannot be described as merely mimicking the claim language.

      **B.**    **GeoTag's Contentions Cite to Specific Source Code**

Defendants contend that GeoTag's citation to a broader section of source code is not specific enough and citations to narrower specific sections of source code are too specific.  GeoTag included both broader citations and narrower citations in order to fully explain the infringement by the accused instrumentality.  To understand how the smaller portions of the code function, it is necessary to disclose the smaller portions of code within the context of the larger portions of the code.  If GeoTag had only cited to the narrower sections of source code,

5

Defendants would have complained that the narrower sections of code are not operational without the larger code and therefore the disclosure is insufficient. Because of this intertwined relationship of the code, it is necessary to cite the same larger section of code (LOC 5704 to LOC 5827) for every limitation. GeoTag's technical expert on infringement described the distributed nature of the source code and its and limitations in his expert report.

Furthermore, Defendants' assertion that 124 pages of source code is "massive" is incorrect. For experts, 124 pages of code is a small amount of code that is readily reviewed, particularly with the use of common code-analysis software. In fact, earlier in the litigation during a meet and confer, counsel for Fish & Richardson stated that the accused instrumentalities were usually short programs of several hundred pages. Furthermore, because of the intertwined nature of overlapping features of the source code, Defendants' complaint that GeoTag cited to the same source code for both the search engine and database is baseless. For example, the claim language requires that the "search engine is configured to search topically," which describes the likelihood of overlapping code and the citation of the same code for multiple limitations.

These citations also need to be taken in context. Many Defendants produced thousands of pages of source code. GeoTag consultants reviewed those productions, and in compliance with the protective order, requested less than five hundred (500) pages of source upon which to base its infringement contentions. The contentions further narrow the scope of source to reference 124 pages (in Local.com's case), and then that is further broken down into pin point citations of one to a few pages. GeoTag can do nothing else to further narrow the citations.

Defendants' complaint that GeoTag stated that the cited source code can be used "alone and/or in combination with third-party [software]…" is misplaced. The alternative language in the infringement contentions necessarily explains multiple infringements: Defendants' code

6

alone, the third party's code alone, and Defendants' code in combination with the third party's code. GeoTag also addressed this complaint by narrowing its infringement contentions to eliminate Exhibit A such that the relevant third party code was now included solely within the body of a single claim chart, rather than separate exhibits. (D.I. 785). GeoTag also identified the specific code that would infringe when used in combination. (*e.g.*, D.I. 821 at Ex. C).

Importantly, Defendants also acknowledge that GeoTag did not rely solely on the citation to a larger section of code and also provided particular citations to very small sections of code (one to six pages) for specific examples demonstrating particular elements of the limitation (*e.g.*, LOC 005713, LOC 005776 to LOC 005777). (D.I. 821 at Ex. A at 1). For example, for limitation 20(a) GeoTag provided four examples ranging from one to three pages[2] for "hierarchy of geographical area" and 12 examples ranging from one to six pages for "database." (D.I. 821 at Ex. A at 20). In view of the citation to a larger section of code, Defendants' complaint that there are not enough narrow citations to specific examples is nonsensical. Providing every example would result in the Defendants complaining that GeoTag provided too many citations. For example, Defendants with thousands of stores in a database would require citations to large blocks of pages (of which Defendants complain in their brief), whereas GeoTag also provided examples to identify the most applicable and representative code. Regardless, Defendants' argument is merely raising a hypothetical of what if GeoTag relies on additional code not currently cited in the infringement contentions, which is not presently a dispute. Furthermore, GeoTag provided a specific link between the source code and the claim limitation in the third column and, as a result, Defendants are fully aware of the scope of GeoTag's accusation of infringement.

---

[2] On average, a page of code contains approximately 20-30 lines of code plus comments and header file references.

7

### C.     GeoTag Properly Analyzed the Doctrine of Equivalents

Defendants' argument that GeoTag's doctrine of equivalents ("DOE") argument does not provide a specific analysis on an element-by-element basis is contradicted by GeoTag's infringement contentions. GeoTag does not assert DOE for an entire claim and instead asserts it on an element-by-element basis. GeoTag is asserting literal infringement for all limitations and is additionally asserting DOE only for those limitations explicitly identified in the contentions.

Defendants' argument that all equivalents arguments are the same rely solely on citation to the second column of each claim chart and ignores the third column. The description of the doctrine of equivalents analysis is substantially similar for all instrumentalities in the second column with the citation to source code differentiating the analysis. A comparison of the third columns for Luxotica and Match.com clearly demonstrates the differences between the infringement allegations under the DOE. (*Compare* D.I. 821 at Ex. B (citing to Match.com code) *with* Ex. D (citing to Luxotica code)). Because the source code differs for accused instrumentalities, the DOE analysis is different for each infringement contention.

Further, Defendants' shifting sands approach to claim construction necessitates a liberal application of DOE. Specifically, Defendants' invalidity expert report revises this Court's claim constructions for "dynamic replication" and "database." For example, the expert states; "I view a database to be a collection of data that is *persistently* stored. Non-persistent data, such as data in a buffer or cache data structure, is used for temporary storage and is not part of the database." Besides being inconsistent with this Court's claim construction order, such an interpretation is inconsistent with the preferred embodiment of the patent, and databases in general, including "persistent" ones. Whether Defendants' expert's interpretation is appropriate is a matter separate from this brief, but the fact that Defendants' joint invalidity expert report redefines this Court's claim construction necessitates that this Court allow liberal application of DOE.

### D. GeoTag Correctly Identified Third-Party Code

Defendants argue a hodge-podge of pot shots attacking GeoTag's reliance on third party source code, none of which have any merit.

First, Defendants erroneously argue that GeoTag's supplemental infringement contentions did not include any citation to third party source code. That is incorrect and was addressed by GeoTag in it Notice of Service of Narrowed Infringement Contentions. (D.I. 785). The supplemental infringement contentions served on June 17 included a reference to exhibit A, which included citations to specific third party source code for each element of each limitation. GeoTag then narrowed its assertion of infringement by eliminating reliance on some third party code and including the specific citations in a single chart for each defendant that narrowed the accusation of infringement. The citations to third party code are therefore not "brand new."

Second, Defendants contend that they have not been given source code from Mapquest, Microsoft, and Google. Under the Protective Order, GeoTag does not have the authority to release source code that it has received. Authority for distribution of source code always remains with the producing party. Furthermore, Defendants have access to the source code of these third parties and were never denied access, to GeoTag's knowledge. This argument is also the epitome of sticking your head in the sand because attorneys of the JDG represent Defendants on behalf of Mapquest, Microsoft, and Google: Alston & Bird (represents MapQuest and Mapquest indemnitees); Williams, Morgan & Amerson (defense costs paid by Microsoft); and K&L Gates (represents Google). The JDG contends that it meets every Tuesday and discusses their joint defense to the litigation. Defendants were on notice of these third parties and had access as part of their JDG. Defendants' contention that they did not have the source code is a result of (a) Defendants' refusal to ask Mapquest/Microsoft/Google counsel who were part of the JDG for access to the code or (b) Defendants refusal to ask *their own provider* for the source code.

9

Instead, Defendants insisted that GeoTag subpoena the third part and provide the code to Defendants, which would have violated the strict terms of the Protective Order prohibiting such a transfer. Regardless, the third parties now have all made the source code available to Defendants.

Defendants' argument that the citations to the third party source code are identical for each Defendant is because the code provided by Mapquest/Microsoft/Google is identical, regardless of the user. To the extent there is any confusion, GeoTag offered to address the confusions for individual Defendants. Some defendants took GeoTag up on the offer and any confusion was immediately resolved. For the remainder of the Defendants, they contended that they did not care if GeoTag was willing to assist with resolving the dispute because it was too late and the only solution is for GeoTag to withdraw its infringement contentions, a draconian remedy to a mere clarification that could be resolved in moments.

Defendants' argument that the references to Google and Mapquest lack any explanation is contrary to the infringement contentions. For example, the infringement contentions identify the "system which associates online information" and "geographical areas" for Mapquest. (D.I. 821 at Ex. C at 1). The infringement contentions also discloses the Google code that "Shows function calls that search with geographic criteria" and "Shows the JavaScript initiation of a search using 'address' as input." (D.I. 821 at Ex. A at 2-3). Additional explanations were required for the Microsoft code; however, no such explanations were necessary for either the Google or Mapquest code.

## CONCLUSION

For the foregoing reasons, GeoTag respectfully requests that the Court deny Moving Defendants' Motion to Strike.

Dated:  August 20, 2013	Respectfully submitted,

	*/s/ David R. Bennett*
By:	David R. Bennett
	Direction IP Law
	P.O. Box 14184
	Chicago, IL 60614-0184
	Telephone: (312) 291-1667
	e-mail:  dbennett@directionip.com

	Daniel Mount
	Kevin Pasquinelli
	Mount Spelman & Fingerman, PC
	333 West San Carlos Street
	Riverpark Tower, Suite 1650
	San Jose, CA 95110
	Telephone: (408) 279-7000
	e-mail: dan@mount.com
		kpasquinelli@mount.com

	Craig Tadlock
	Texas State Bar No. 00791766
	Keith Smiley
	Texas State Bar No. 24067869
	Tadlock Law Firm
	2701 Dallas Parkway, Suite 360
	Plano, Texas 75093
	Telephone: (903) 730-6789
	e-mail: craig@tadlocklawfirm.com
		keith@tadlocklawfirm.com

	**ATTORNEYS FOR PLAINTIFF**
	**GEOTAG, INC.**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 20, 2013, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

	*/s/David R. Bennett*
	David R. Bennett

11