# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | **Case No. 2:10-cv-00265-JRG** |
| **v.** | |
| **FRONTIER COMMUNICATIONS CORP.,** *et al.*, | **CONSOLIDATED CASE** |
| **Defendants.** | |

## REPLY IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT
## BASED ON THE GEOGRAPHICAL AREAS CLAIM LIMITATIONS

The Moving Defendants respectfully submit this Reply in support for their Motion for Summary Judgment Based on the Geographical Areas Claim Limitations ("Motion").

## I.      Introduction

To survive summary judgment, Plaintiff GeoTag, Inc. ("GeoTag") attempts to rely upon an expert report that advances a theory of infringement that is completely divorced from the plain language of the asserted claims.  GeoTag also attempts to confuse the plain language of the claims with a host of arguments that bear no relation to the legal issue at hand.  Indeed, contrary to GeoTag's claims, Defendants are not asking the Court to adopt a new claim construction, but are simply applying the construed claim terms in the context of the explicit and clear claim language.  Accordingly, there is no need to re-open claim construction as GeoTag suggests.  The Court should reject GeoTag's attempts to deflect the Court's attention from the straightforward application of the claim construction to the claims and should grant this Motion.

## II.     There Is No Dispute of Facts Between GeoTag and the Moving Defendants.

In its Opposition Brief, GeoTag does not dispute any of the facts set forth in the Moving Defendants' Statement of Undisputed Material Facts.  In particular, GeoTag does not dispute that the Moving Defendants' Opening Letter Brief described the three "nesting limitations.[1]"  (*See* Mot., SUMF 2.)  Nor does GeoTag dispute that in response to the Moving Defendants' Opening Letter Brief, GeoTag's infringement expert (for all of the remaining Moving Defendants[2]), David Klausner, explicitly states in his expert report that he does not offer infringement opinions as to whether any accused instrumentality meets the three "nesting limitations." (*See* Mot., SUMF 3.)

---

[1] The Moving Defendants use the term "nesting limitations" as shorthand for the three claim limitations at issue in its Motion and in this Reply.  Moving Defendants do not intend to reconstrue the Court's claim construction by use of this term.  *See* Section IV, *infra*.

[2] The expert report of Chuck Easttom that GeoTag served with respect to Defendant Yellowpages.com, LLC is no longer at issue because Defendant Yellowpages.com has been dismissed by GeoTag.

GeoTag argues that its "thousands of pages of claim charts and hundreds of pages of discussion regarding infringement in the expert report of David Klausner" result in "many material facts in dispute." (Opp'n Br. 3.) However, because Mr. Klausner explicitly states in his report that he does not opine on whether any accused instrumentality meets the geographical areas nesting limitations, he necessarily admits that nothing in his report creates a disputed fact with respect to whether any of the accused instrumentalities meet these limitations. Moreover, because GeoTag's claim charts are adopted by and incorporated verbatim into Mr. Klausner's expert report, Mr. Klausner likewise necessarily admits that GeoTag's claim charts do not create a disputed fact. There simply is no issue of fact for the jury to decide.

## III.    The Moving Defendants Have Met Their Summary Judgment Burden.

In *Exigent Technology v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1308–09 (Fed. Cir. 2006), the Federal Circuit applied the United States Supreme Court's no evidence summary judgment burden shifting standard from *Celotex Corp. v. Catrett*, 477 U.S. 317, 321, 324–25 (1986)). This is the applicable summary judgment standard.[3]

## IV.    The Plain Language of the Asserted Claims Requires "Geographical Areas" That Must Satisfy Three Nesting Limitations.

GeoTag correctly notes that the word "nesting" is not discussed or used in the '474 Patent or in the Court's Claim Construction Rrder. Moving Defendants do not suggest that it is. Rather, "nesting" is a word that the Moving Defendants use to refer to the <u>cumulative</u> "geographical areas" limitations, which are cumulative by virtue of the fact that each claim refers to "geographical areas," and then refers back to "**<u>said</u>** . . . geographical areas" twice more

---

[3] GeoTag does not, and cannot, argue that the Moving Defendants have not properly shifted the burden to GeoTag under *Exigent Technology*. GeoTag simply argues that it does not apply. However, even if the *Celotex* standard itself applies without further interpretation by the Federal Circuit, the Moving Defendants have properly shifted the burden to GeoTag to show that there is a genuine factual issue for trial. Indeed, it is arguably an easier to shift the burden to GeoTag under the *Celotex* standard itself.

throughout the remainder of the claim.[4]  The plain language of the asserted claims set forth these three cumulative limitations for the "geographical areas" claim term.

### Limitation 1 - a plurality of geographical areas exist in the database

The first limitation of the "geographical areas" claim term—*i.e.*, that a plurality of geographical areas exist in the database—flows directly from the plain language of the asserted claims.  Because the claims refer to either a "hierarchy" or a "plurality" of geographical areas, it necessarily follows that there are at least two geographical areas—*i.e.*, a plurality of geographical areas.  It also follows that the geographical areas exist in the database, because information in the claimed "database" is organized into "geographical areas":

> Claim 1: "a database of information organized into [a] hierarchy of geographical areas";
>
> Claim 20: "[a] database of information organized into a predetermined hierarchy of geographical areas comprising at least a geographical area of relatively smaller expanse and a geographical area of relatively larger expanse, said area of larger expanse including a plurality of areas of smaller expanse";
>
> Claim 31: "organizing a database of on-line information into a plurality of geographical areas."

GeoTag cannot dispute the first limitation.  Indeed, GeoTag only argues that the claimed geographical areas are not required to be "predetermined."  (Opp'n Br. 4.)  However the Moving Defendants do not contend that the claimed geographical areas are "predetermined."  This is simply a straw man.

### Limitation 2 - at least one of these geographical areas, which exist in the database prior to selection of the geographical search area, must be selectable to serve as the geographical search area

The second limitation of the "geographical areas" claim term is that at least one of the geographical areas must be selectable to serve as the claimed "geographical search area."  After

---

[4] GeoTag contends that the Moving Defendants' use of the descriptive term "nesting" is an attempt to "resurrect" the "encompassing" position that this Court rejected during claim construction -- *i.e.*, that the broader geographical areas must encompass the narrower geographical areas.   (Opp'n Br. 4.)  To be clear however, "nesting" does not have anything to do with whether a broader geographical area encompasses a narrower geographical area.

referring to "geographical areas" in the portion of the claims covering the "database" (*see* Limitation 1 above), each asserted claim refers back to the <u>same</u> "geographical areas" in relation to the required selection of a "geographical search area" by the search engine, through the use of the "**<u>said</u>** . . . geographical areas"[5] language:

> <u>Claim 1</u>: "said search engine further configured to select one of **<u>said</u>** hierarchy of geographical areas prior to selection of a topic so as to provide a geographical search area";

> <u>Claim 20</u>: "said search engine configured to select at least one geographical area in **<u>said</u>** hierarchy of geographical areas so as to define a geographical search area";

> <u>Claim 31</u>: "a search engine executing in a computer to select one or more of **<u>said</u>** geographical areas so as to select a geographical search area."

Thus, to be one of the claimed "geographical areas," the plain language of the claims explicitly requires that it has to be selectable to serve as the "geographical search area."  Because the claimed "geographical areas" must be selectable as the "geographical search area," it also necessarily follows that the claimed "geographical areas" must exist in the database prior to the selection of the "geographical search area."

GeoTag argues, with respect to claim 31, that the claimed "geographical areas" need not be "predetermined."  (Opp'n Br. 6.)  Again, to be clear, the Moving Defendants do not contend that they need be "predetermined."  This argument is simply a reiteration of the same argument that GeoTag makes with respect to Limitation 1 (discussed above).  With respect to claims 1 and 20, GeoTag correctly notes that the claim language is "said hierarchy of geographical areas," and not "said geographical areas."  (Opp'n Br. 5–6.)  However, this is a distinction without a

---

[5] As noted in the Moving Defendants' Motion, by referring back to "**<u>said</u>** . . . geographical areas," it is well-settled Federal Circuit law that the "geographical areas" referred to throughout the claims are <u>same</u>.  *Raylon v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1376 (Fed. Cir. 2012) ("As our cases require, 'said' refers back to an earlier use of that term in the claim.") (citing *Intamin, Ltd. v. Magnetar Techs. Corp.*, 483 F.3d 1328, 1333 (Fed. Cir. 2007)).  To read the Asserted Claims otherwise would be to excise the identifier "**said**" from the claims.  *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 951 (Fed. Cir. 2006) (rejecting a construction that would read limitations out of the claim because "claim language should not be treated as meaningless").

difference.  In claim 1, the language "said hierarchy of geographical areas" simply requires that <u>all</u> of the geographical areas in the selected hierarchy need to be selectable as the "geographical search area."   In claim 20, the claim specifically states that the search engine is configured to select "at least one geographical area in said hierarchy of geographical areas," therefore requiring that that <u>at least one</u> of the geographical areas in the hierarchy need to be selectable as the "geographical search area."  In either case, at least one of the claimed geographical areas must be selectable to serve as the geographical search area.  This is precisely how the Moving Defendants have described Limitation 2.

> **<u>Limitation 3</u> - the geographical area into which an entry is dynamically replicated is at least one of the geographical areas that existed in the database prior to the selection of the geographical search area**

The third limitation of the "geographical areas" claim term is that the geographical area into which an entry is dynamically replicated is at least one of the geographical areas that was selectable as the "geographical search area" (and therefore was a geographical area that existed in the database prior to the selection of the search area).  This limitation also flows directly from the plain language of the claims:

> <u>Claim 1:</u> "wherein within **<u>said</u>** hierarchy of geographical areas at least one of said entries associated with a broader geographical area is dynamically replicated into at least one narrower geographical area";
>
> <u>Claim 20:</u> "wherein at least one of said entries in **<u>said</u>** geographical area of relatively larger expanse is dynamically replicated into at least one of **<u>said</u>** geographical areas of smaller expanse";
>
> <u>Claim 31:</u> "dynamically replicating an entry from broader geographical area into **<u>said</u>** geographical search area [where the claim provides to "select one or more of **<u>said</u>** geographical areas so as to select a geographical search area"]."

As noted above, claim 1 requires "a database of information organized into [a] hierarchy of geographical areas," and a search engine that is configured to select "one of **<u>said</u> hierarchy of geographical areas</u>** to provide a "geographical search area."   With respect to dynamic

replication, claim 1 requires that "within **said** hierarchy of geographical areas at least one of said entries associated with a broader geographical area is dynamically replicated into at least one narrower geographical area."   Accordingly, the geographical area into which the entry(ies) are dynamically replicated must be one of the geographical areas in the hierarchy of geographical areas that was selectable to serve as the geographical search area (and therefore existed prior to the selection of the geographical search area).

As previously discussed, claim 20 requires "[a] database of information organized into a predetermined hierarchy of geographical areas comprising at least a geographical area of relatively smaller expanse . . . ."   Claim 20 further requires a search engine that is configured to "select at least one geographical area in **said** hierarchy of geographical areas to as to define a geographical search area."   Because "the geographical area of smaller expanse" is one of the geographical areas of which the "hierarchy of geographical areas" is comprised, and because "at least one geographical area in said hierarchy of geographical areas" is selected to define the "geographical search area," it necessarily follows that the "geographical areas of smaller expanse" must be selectable as the geographical search area (and therefore existed in the database prior to the selection of the geographical search area).   With respect to dynamic replication, claim 20 requires the entry(ies) to be dynamically replicated into "at least one of **said geographical areas of smaller expanse**."   Accordingly, the geographical area into which the claimed dynamic replication is required to occur is one of the geographical areas that existed in the database prior to the selection of the geographical search area.

Finally, claim 31 requires "organizing a database of on-line information into a plurality of geographical areas," and "a search engine . . . to select one or more of **said** geographical areas so as to select a geographical search area."   The geographical area that is selected to serve as the

6

geographical search area necessarily existed in the database prior to the selection of the geographical search area, or it would not have been selectable as such.  In the dynamic replication step, claim 31 requires "dynamically replicating an entry . . . into **said** geographical search area."  Therefore it follows that the geographical area into which the claimed dynamic replication is required to occur is one of the geographical areas that existed in the database prior to the selection of the geographical search area.

GeoTag argues that the Moving Defendants are trying to circumvent the construction of "database."  (*See* Opp'n 6.)  However, the cumulative requirements of the "geographical areas" claim term have nothing to do with the "database" claim term, or the Court's construction of that term.  Indeed, the cumulative requirements of the "geographical areas" claim term follow directly from the plain language of the claims and are entirely consistent with the Court's claim constructions.  GeoTag also contends that the Moving Defendants are arguing that "pre-set" geographical areas are required.  (*See id.* 6–7.)  To be clear, the Moving Defendants do not contend that the claimed geographical areas are required to be "pre-set," and nothing in the Moving Defendants' Motion suggests otherwise.  Finally, GeoTag confusingly argues that the limitations of the "geographical areas" claim term would result in a physical impossibility, because replicating entries into a geographical area that existed prior to the selection of the search area would mean it would no longer have existed prior to the selection of the search area (which GeoTag calls a graphical area that "pre-exists" the search).  (*See id.* 7.)  GeoTag's logic does not follow.  Copying entries into a geographical area that existed prior to the search would have no effect on whether it existed prior to the search.

**VI.    Conclusion**

GeoTag offers no evidence that the accused instrumentalities meet the limitations of the "geographical areas" claim term.  Therefore, summary judgment should be granted.

October 28, 2013                    Respectfully submitted,


                                    /s/ *Derek H. Swanson*
                                    David E. Finkelson (admitted *pro hac vice*)
                                    Derek H. Swanson (admitted *pro hac vice*)
                                    Lead Counsel
                                    McGuireWoods LLP
                                    One James Center
                                    901 East Cary Street
                                    Richmond, VA  23219
                                    Telephone: (804) 775-1000
                                    Fax: (804) 775-1061
                                    Email: *dfinkelson@mcguirewoods.com*
                                    Email: *dswanson@mcguirewoods.com*

                                    Lindsey L. Hargrove
                                    State Bar No. 24065373
                                    McGuireWoods LLP
                                    JPMorgan Chase Tower
                                    600 Travis Street, Suite 7500
                                    Houston, TX  77002-2906
                                    Telephone: (713) 571-9191
                                    Fax: (713) 571-9652
                                    Email: *lhargrove@mcguirewoods.com*

                                    *Counsel for Defendants STIHL Incorporated and*
                                    *Remington Arms Company, Inc.*

<u>CERTIFICATE OF SERVICE</u>

I certify that on October 28, 2013 the foregoing document was filed through the Eastern District of Texas' CM/ECF system, for notice of filing by that system, under Federal Rule of Civil Procedure 5(b)(2)(E), on all counsel of record by electronic mail.

<u>/s/ *Derek H. Swanson*</u>
Derek H. Swanson