**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| GEOTAG, INC., | § § § | |
| *Plaintiff*, | § § § | |
| *v.* | § § | CASE NO. 2:10-CV-00265-JRG |
| FRONTIER COMMUNICATIONS CORP., *et al.*, | § § § | **LEAD CASE** |
| *Defendants*. | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Summary Judgment of Non-Infringement Under the Doctrine of Equivalents (Dkt. No. 1100), filed September 23, 2013. The moving defendants argue that prosecution history estoppel bars Plaintiff GeoTag, Inc. ("GeoTag") from asserting infringement under the doctrine of equivalents redgarding the "dynamic replication" limitation of United States Patent No. 5,930,474 ("the '474 Patent"). The Court held a hearing on this motion on November 8, 2013, at which the Court indicated that the motion would be taken under advisement. Having considered the briefing and the arguments of both sides, the Court now finds that the motion should be and is hereby **GRANTED**, for reasons set forth below.

### I.   BACKGROUND

The '474 Patent, titled "Internet Organizer for Accessing Geographically and Topically Diverse Information," was issued on July 27, 1999. Its claims relate to a method, system, and apparatus for searching information both topically and geographically, wherein information relevant to one geographical area is "dynamically replicated" into a database relevant to another

geographical area.[1] The accused instrumentalities in this case are web sites or mobile applications involving geographical data. With few exceptions, these fall into four broad categories: (a) online "yellow pages"-type sites that are designed to help consumers locate businesses near a geographical area; (b) store-locator functionalities on the web sites of brick-and-mortar retailers; (c) mobile store locator "apps"; and (d) job locator sites that help potential applicants find nearby employment.

The "dynamic replication" limitations now present in asserted claims 1, 20, and 31 of the '474 patent were not initially included in application number 08/595,026 ("the '026 application'). Rather, that application asserted claims over a broad area of information organized by both topic and geography (Dkt. No. 1100-3, at 3-14. In 1998, the United States Patent and Trademark Office (PTO) rejected those claims as obvious in light of a then-existing Yahoo! search engine, which allowed users to search by topic within categories of regional information. *Id.* In a subsequent interview with one of the inventors, the patent examiner appears to have agreed that "the dynamic replication of an entry in narrow geographical area would overcome the prior art of record" (Dkt. No. 1100-4). Later, the '026 applicants amended each of the asserted independent claims to include dynamic replication of entries associated with a broad geographical area into at least one narrower geographical area (Dkt. No. 1100-5). With those modifications, the PTO approved the '474 Patent. *See* '474 Patent Col. 38-40.

---

[1] The Court has defined "dynamically replicated" as meaning "automatically copied or inherited, within the database, at the time needed rather than at a time decided or established in advance" (Dkt. No. 472, at 26).

## II.  LEGAL STANDARDS

Ordinarily, the doctrine of equivalents allows a patentee to claim, not only subject matter literally delineated by the claims, but also insubstantial alterations to the claims as written. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 733-34, (2002) (*Festo VIII*). "When, however, the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent." *Id.* "[P]rosecution history estoppel bars the application of the doctrine of equivalents to recapture subject matter that was surrendered during prosecution." *Hilgraeve Corp. v. McAffee Assocs., Inc.*, 224 F.3d 1349, 1355 (Fed. Cir. 2000). It applies when a claim is amended for "a substantial reason related to patentability," including "to avoid the prior art, or otherwise to address a specific concern—such as obviousness—that arguably would have rendered the claimed subject matter unpatentable." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 30-33 (1997). Prosecution history estoppel is a matter of law for a judge to decide, rather than a jury. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 f.3d 1359, 1368 (Fed. Cir. 2003) (*Festo IX*).

When an amendment to a claim narrows the scope of the claim, prosecution history estoppel applies. The estoppel is not a complete bar, limiting the claim element to its literal terms. *See Festo VIII*, at 737-38. However, once prosecution history estoppel is established, the patentee bears the burden of proving that the equivalent in question was not surrendered—"the Court should presume that the patentee surrendered all subject matter between the broader and narrower language." *Id.* at 740. A patentee may rebut this presumption by, for instance,

demonstrating that the equivalent was "unforeseeable at the time of the application." *Id.* at 740-41.

### III. ANALYSIS

Plaintiffs first argue that Defendants have failed to meet their burden of proving that the amended claims are narrower than the original claims. This is a weak argument. The original claims on the application required no dynamic replication; the amended claims did (Dkt. No. 1100-5). Clearly, a claim that requires a dynamic replication element is narrower than one which does not.

Having determined that the amended claims are narrower than the original claims, the Court must next determine whether the amendment was amended for a "substantial reason related to patentability." *Warner-Jenkinson*, 520 U.S. at 30-33. The law presumes that the amendment *was* related to patentability, and so Plaintiff here bears the burden of proving otherwise. However, in the face of the evidence relating to the Yahoo! prior art mentioned above, it is hard to imagine what evidence GeoTag could marshal to support a claim that the amendment was not made for patentability purposes. GeoTag argues that the limitations added to the application "differed from the Examiner's suggestion"—presumably because the Examiner's "suggestion" was written to be a summary, not detailed claim language. This is unpersuasive. GeoTag produces no evidence suggesting that the amendment was *not* made in order to overcome the objections raised by the Examiner. Accordingly, the Court finds that the amendment was narrowed for reasons of patentability, and that prosecution history estoppel applies.

The last question for the Court is whether the particular equivalents in question are within the scope of the patentee's surrender. The baseline presumption for determining the scope of surrender is that the patentee has surrendered all territory between the originally claimed invention and the claims as written, and the burden lies with the Plaintiff to prove otherwise. *Festo VIII*, 535 U.S. at 740-41. Since the burden rests with the Plaintiff to prove an unsurrendered equivalent, Defendants are certainly within their rights to seek summary judgment of non-infringement with respect to *all* equivalents and allow Plaintiffs to specify and prove any *particular* equivalents that were unforeseeable or otherwise not within the scope of the patentee's surrender.

Plaintiff has made no attempt to prove that any particular equivalent was outside the scope of the patentee's surrender. Instead, GeoTag incorrectly argues that the burden is on the moving defendants to articulate an equivalent that they contend to be barred. Presumably, both parties are most concerned with the equivalents asserted by Plaintiff in this case. However, neither party has presented evidence of what those equivalents might be. As a consequence, Plaintiff has failed to carry its burden in this regard.

In the absence of any evidence of any kind about which equivalents are asserted and whether they were or were not surrendered during prosecution, the Court finds that the *Festo IX* presumption governs in these circumstances. The patentee is presumed to have surrendered all territory between the original claims—which lacked a dynamic replication element—and the amended claims—which include dynamic replication. As a result, Plaintiff is equitably estopped from arguing that the "dynamic replication" elements of the '474 Patent are satisfied by some equivalent process. If the moving defendants are to be found to infringe a claim of the '474

Patent, they must also be found to infringe at least one of the dynamic replication limitations literally, rather than under the doctrine of equivalents.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment of Non-Infringement Under the Doctrine of Equivalents (Dkt. No. 1100) is hereby **GRANTED**, as specifically set forth herein.

**So ORDERED and SIGNED this 24th day of January, 2014.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE